## McIntire v. Marian Coal Company.

(Decided February 1, 1921.)

### Appeal from Letcher Circuit Court.

Mines and Minerals—Surface Owner Cannot Interfere With Operation.—The surface owner of lands from which the minerals have been sold by deed granting all rights, privileges and easements on the surface which the grantee might deem necessary or convenient for mining and removing such minerals and reserving only such rights to the surface owner as were not inconsistent with the rights and privileges granted to the owner of the minerals, has no right to exclude or interfere with the owner of the mineral rights in the development of his property by limiting

his improvements and buildings to a certain part of the surface outside the cleared and improved land of the surface owner.

W. H. MAY and R. MONROE FIELDS for plaintiff.

JOHN D. CARROLL, MORGAN & HARVIE, P. T. WHEELER and W. O. DAVIS for defendant.

OPINION OF THE COURT BY JUDGE SAMPSON—Overruling plaintiff's motion for an injunction.

Defendant Marian Coal Co. and its lessors own and have in possession all the coal and other minerals in a particularly described tract of land containing one hundred and forty-two acres located in Letcher county. The deed under which it holds, in addition to granting all the coal and other minerals mentioned therein, grants certain specified rights and privileges by the following clauses:

"The parties of the first part have hereby sold, granted and conveyed, and by these presents do hereby bargain, sell, grant and convey unto said party of the second part, its successors and assigns all the following described property, rights, privileges and appurtenances, . . . And to use and operate the said land and the surface thereof, and any and all parts thereof, including the right to use, land and surface thereof, and any and all parts thereof, including the right to use, divert, dam and pollute water courses thereon in any and every manner that may, by party of the second part, its successors and assigns, be deemed necessary or convenient for the full and free exercise and enjoyment of any and all the property, rights and privileges hereby bargained, sold, granted or conveyed, including but not limiting to that of drilling, mining, pumping and therefrom removing or otherwise utilizing said pipe, telegraph or telephone lines, rights of way, roads, ways, timber, coal, mineral, slate, oil, gas, salt water, clay, iron, ore, mines, stone and subterranean substance and products thereof, and any and all other property and rights hereby bargained, sold, granted or conveyed, and for the transportation, therefrom of said articles; and also the right to build, erect, alter, repair, maintain and operate upon said land, and at its option to therefrom remove any and all houses, shops, buildings, tanks, derricks inclines, tipples, dams, coke ovens, store and warerooms, and ma-

chinery and mining, any and all equipment, that may, by the party of the second part, its successor and assigns be deemed necessary and convenient for the full and free exercise and enjoyment of any and all the property, rights and privileges hereby bargained, granted, sold or conveyed; and the right to thereupon convert, reduce, refine, store, dump and manufacture the said or any or all of said property, or products, in, upon and under said land, or other land owned, or hereafter acquired by said party of the second part, its successor or assigns, by purchase, lease or otherwise.''

The plaintiff, Ben McIntire, is the son and grantee of Wm. McIntire, who made the deed for the coal, mineral rights and privileges mentioned and in part copied above, and the son claims and now resides upon the surface of the tract.

The deed to the mineral was originally made by Wm. McIntire to the Rockhouse Realty Co., Inc., predecessor in title of the defendant, Marian Coal Co., in June, 1907, reserving the surface with certain limited rights which we will later set out, and in August, 1911, he conveyed the surface and such rights as he owned to his son, Ben McIntire, plaintiff herein. Ben lived on the land at the time his father sold the minerals to the company, but did not own or claim any of it. Both defendant and plaintiff claim under deeds from Wm. McIntire, one for the minerals, which is the dominant estate, the other the surface or servient estate.

In his deed to the Rockhouse Realty Co., Wm. McIntire made the following reservations:

''But there is reserved to the parties of the first part all the timber upon the said land except that necessary for the purposes hereinbefore mentioned; and there is also reserved the free use of said land for agricultural purposes so far as such use is consistent with the rights hereby bargained, sold, granted and conveyed; and the right to mine and use coal for their own personal household and domestic purpose.'' These are the rights conveyed to and now held and claimed by plaintiff Ben McIntire.

The deed for the mineral contained a general warranty clause, but the foregoing are the only exceptions and reservations made by the grantor, and he only conveyed and attempted to convey to his son, the plaintiff, such title and rights as were reserved, and no more.

This case, therefore, involves the construction of the deed conveying the minerals to the Rockhouse Realty Co. in 1907, the question being: what rights have the successors of the grantee of the mineral to the use of the surface of the lands described in the deed? May the coal company erect and maintain houses, tipples, stores, roads or other structures used in connection with its mining lease any place on the surface which it shall "deem necessary or convenient," according to the language of the deed?

The rule is that where a deed which grants land and certain specified rights and privileges, there being no ambiguity in the instrument, it will be construed and enforced according to its terms. But where there is ambiguity or uncertainty in the deed the doubt will be resolved in favor of the grantee as agent of the grantor. There is no claim that the terms of the deed are ambiguous or uncertain, and no such claim could well be made, for it leaves nothing to be supplied, but makes a sweeping and complete conveyance of all the coal and other minerals and certain specified rights and privileges to the company, to be by it exercised at will, that is when it or its successors shall "deem it necessary or convenient" to do so. The terms of the deed could hardly be broader or mere sweeping in favor of the grantee.

Another fundamental rule of construction governing in cases like this is that the instrument shall be construed most strongly against the grantors and in favor of the grantee both upon the grant of the property and the rights and privileges specified.

In the reservation in the deed copied above it is provided that the use of the surface of the land by the grantor should not contravene any of the provisions of the grant, but should be "consistent with the rights, hereby bargained, sold, granted or conveyed" to the company. It thus plainly appears that the parties intended for the surface owner to have and exercise only such rights on the surface as did not interfere with the rights of the company or its successor to "build, erect, alter, repair, maintain and operate upon said land, . . . houses, shops, buildings, tanks, derricks, inclines, tipples, dams, coke ovens, store and warerooms, and machinery and mining equipment," and no more. In other words the parties agreed and by their deed evidenced their purpose to allow the company to have the full use

of the surface for all the above mentioned purposes, and others mentioned elsewhere in the deed, whenever and where "deemed necessary or convenient" by the grantee or its successors in title.

Reliance is placed upon the rule stated in Blue Grass Coal Corporation v. Combs, 168 Ky. 437, where we held the right of the coal operator to use the surface of the land to depend upon a reasonable necessity. The instrument there considered was a lease and not a deed, and its terms were very different from those employed in the deed now under consideration. That lease only gave the grantee the privilege of using the surface of the land when "deemed necessary" by him for the production of the coal leased. Here the deed allows the grantee every conceivable privilege, "deemed necessary or convenient" by it. It does not have to be necessary or even reasonably necessary, but if the grantee or its successors shall deem the structure or improvement either necessary or convenient, it may place the same upon the surface of the land, even though it may occupy the enclosed and improved land of McIntire, provided it does not destroy or render useless the improvements already placed upon the surface by him, and this includes his residence, barn, garden, orchard, well and such structures as are of a permanent and substantial nature.

The company may build all around these improvements, in reasonable proximity, and thus occupy all the surface which it may either deem necessary or convenient. In others words the grantors to the mineral deed agreed for a consideration that the company and its successors should have all these rights without interference from McIntire or his grantees, and that McIntire and his grantees should have the free use of the surface only when and to the extent that the company did not deem the surface either "necessary or convenient" to its business. This is a hard and apparently broad grant, but the parties grantors had the right, power and capacity to make such a contract and having done so both they and their successors to the surface are bound thereby. No one would have questioned the right of McIntire to have sold the land in fee, which would have carried with it all the rights and more, enumerated in the mineral deed, and having the right to sell and convey all the land, rights and privileges therein, he could, therefore, sell

and convey a part thereof with certain enumerated rights, and be bound by such conveyance.

Undoubtedly, under the plain terms of the deed, the Marian Coal Co. has the right and could, by showing the necessity or convenience thereof, use and occupy the whole surface of the land in question even to excluding the plaintiff and taking his house and garden, but such taking would have to be after satisfaction or adjudged compensation for such improvements, which is but another way of saying that the mineral estate under the deed is dominant, superior and exclusive in every circumstance or condition where the owner thereof shall deem it necessary or convenient to make such use of the surface as the deed allows.

Courts have never interfered to prevent *sui juris* landowners from selling their lands or an interest therein to which the title was not questioned, nor interfered to prevent them from making contracts which relate to their real estate, which might prove burdensome in the future, where there is no fraud or mistake. When such a contract is made the parties must abide the results and courts will aid only in the enforcement of such solemn and properly executed agreements between the parties.

The plaintiff in this case does not claim to be an innocent purchaser or that any fraud was practiced upon or advantage taken of him, for he bought the surface some years after the execution of the mineral deed in which the grantee and its successor was given the sole right to use so much of the surface as it might deem "necessary or convenient." He, therefore, took the surface with full knowledge of the limited use he could make of it, for the deed was of record and he had actual knowledge of its terms. He is in no position to complain.

Of course the company cannot use the surface or any part thereof for farming or gardening purposes, or any other purpose not specifically granted by the deed or reasonably to be infered from the nature and terms of that instrument.

We must hold with the trial judge that the contract means what it says, in the absence of ambiguity or uncertainty, and so holding overrule the motion of plaintiff for an injunction staying the Marian Coal Co. from the use and occupancy of the improved lands of plaintiff, except as herein set forth.

Chief Justice Hurt and Judges Settle and Clay sat with me on the consideration of this motion and concur in the conclusions reached.