## North-East Coal Company v. Hayes et al.

(Decided June 24, 1932.)

640

KIRK & WELLS, for appellant.

A. J. KIRK & SON and W. G. WELLS for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Reversing.

On November 1, 1902, W. W. Stafford, etc., conveyed a boundary of land they owned in Johnson county to another, under whom appellees, Arch Hayes and Louisa Hayes, claim. The deed contained this clause:

"There is reserved in this deed of conveyance all the coals, minerals and mineral products, all the oils and greases, all the salt mineral and salt waters, fire and potter clay, all iron and iron ores, all the stone and such of the standing timber as may be necessary for actual mining purposes only, and the the exclusive rights of way for any and all railroads and ways that may hereafter be located on said property, either by the said W. W. Stafford and Isaac Ward or their heirs, or assigns in, on or under the heretofore described tract of land, together with the right to enter upon said land and use and operate the same and the surface thereof in all and any manner that may be deemed necessary and convenient for mining, removing therefrom all the said minerals and products, and the manufacture of the same and shipping the said articles and products above named, as well as to remove the products from or out of any other land owned by the said W. W. Stafford and Isaac Ward, their heirs and assigns, or from any lands they may hereafter acquire, with the exclusive right to erect thereon, maintain and remove therefrom all such structures as may be deemed necessary or convenient by the said W. W. Stafford and Isaac Ward, their heirs and assigns, in the free and full exercise and enjoyment of the rights and privileges herein reserved.

"The party of the second part is to have the right to mine and use coal for household purposes only and the right to cut and use timber for farming purposes."

The tract of land contains 61.75 acres. The mineral rights reserved in the deed are the property of the North-East Coal Company. Appellees brought this action against the coal company on January 15, 1929, alleging that the coal company had removed the coal from the land, not leaving sufficient pillars to support the roof, and by reason thereof the surface of the land had broken down, and slides had come in the surface, destroying its market value; that the defendant had negligently failed to construct adequate drainage pipes, and had changed the natural flow of the water on plaintiff's bottom lands, and had caused slips or slides to come and run out over the bottom lands, thereby destroying and rendering unfit for use the water in the plaintiff's well, by all of which the farm on which they resided had been damaged in the sum of $2,000. The allegations of the petition were denied by answer; proof was heard; and at the conclusion of the evidence the defendant moved the court to give the jury a peremptory instruction to find for it. This was refused. The defendant then moved the court to give the jury the following instruction:

"The court instructs the jury that the defendant had the right to go upon, over and under the land in question for the purpose of mining and removing all the coal therefrom and if the jury believe from the evidence that the coal which the defendant has mined and removed from under said property was done in the usual, customary and proper manner, defendant would not be liable for any resulting breaks or damages in or to the surface of said land and the jury will find for the defendant."

This instruction was refused; the court thereupon on its own motion gave the jury this instruction, to which the defendant excepted:

"If the jury believes from the evidence that by reason of defendant mining and removing the coal from under the plaintiffs' surface of the land, mentioned in evidence, the surface of said land was caused to crack or break down or slides to come thereon, or that in mining said coal the defendant caused water from the mines to run into and injure plaintiff's well or run onto and injure plaintiff's land, they will find for the plaintiff. If they do not so believe and find they will find for the defendant."

642

The court also told the jury that, if they found for the plaintiff, and believed that the injury was permanent and could not be remedied at a reasonable expense, then the measure of damages was the diminution in the market value of the land caused by the things complained of, but, if the matters complained of were temporary, and could be remedied at a reasonable expense, then the measure of damages was the diminution in the value of the use of the property, up to the filing of the suit. The court also gave the jury this instruction:

"C. The jury will say in their verdict whether the damages awarded, if any, is in whole or in part only, and what part, for permanent or temporary injury or both."

The jury returned the following verdict:

"We the jury agree and find for the plaintiff in the sum of Five Hundred ($500.00) Dollars, for damages, considered both temporary and permanent."

The court refused a new trial and entered judgment for the plaintiff for $500. The defendant appeals.

1. As to the breaks in the surface: In West Kentucky Coal Co. v. Dilback, 219 Ky. 783, 294 S. W. 478, 479, the court thus stated the rule:

"As we have said, the right to mine is subservient to the right of the surface owners to have the surface maintained in its natural state free from subsidence or partings of the soil, and this right of support is absolute and not dependent upon any question of negligence. But this doctrine ought not to be extended any further than applying it to the surface above the mining operation." To the same effect see Jones Coal Co. v. Mays, 225 Ky. 365, 8 S. W. (2d) 626.

The proof showed that on about 4 acres of ground there were fourteen breaks in the surface, due to the subsidence of the ground after the coal was taken out. But the proof for the defendant showed that this land was only fit for pasture, and that the whole trouble could be remedied at the expense of $25 or $30. If this was true, the injury was temporary, and the reasonable cost of

removing the trouble was the limit of recovery. If the injury was permanent, this fact should be considered by the jury in determining the amount to be allowed for the permanent injury to the whole tract. There was proof that other slides had come, not caused by the removal of the coal, and, if this testimony was true, the defendant was not liable for these slides. The court should have instructed the jury as above indicated on this matter.

2. There was proof that the defendant had put in a tile that was too small to carry off the water, and that the water for this reason ran over the plaintiff's bottom and injured it. If the injury to the land thus caused was temporary, the measure of recovery would be the reasonable diminution in the rental value of the land up to the bringing of the suit. If it was permanent, this fact should be considered by the jury in determining the amount to be allowed for the permanent injury of the tract, which is the difference in its fair market value immediately before and immediately after the injury.

There was proof that the foul water from the mine, running into the branch, made it unfit for cattle to drink, or for other uses, and injured the land. It is earnestly insisted that, as by the contract the mine owner had a right to use the surface in any manner "that may be deemed necessary and convenient for mining," he had a right to allow the water from the mine to run off in its natural course into the branch. But the words "necessary and convenient" must be read together. The rule is that a man must enjoy his own property in such a manner as not to invade the legal rights of his neighbor. Broom's Legal Maxim, p. 364. This is only to state in other words the Golden Rule; that is, it requires the owner of the mine to use ordinary care not unnecessary to injure the owner of the surface. If the owner of the mine could at a reasonable expense dispose of the water so as not to injure the surface owner, it was his duty to follow the course which the owner of both the surface and the mine would, in the exercise of ordinary care, reasonably follow for his own protection, as the owner of the surface and the mine. The reasonable expense is such a sum as the owner of both the surface and the mine would, in the exercise of ordinary care, reasonably incur to protect the surface from injury. In Kenmont Coal Co. v. Hall, 239 Ky. 686, 40 S. W. (2d) 301, 304, the controversy was between the owner of the mine and the owner of the sur-

face as to the use of the timber on the tract of land, and the court thus stated the rule:

"The parties to the conveyance are each entitled to prevent the other from exercising their or its rights of ownership in fee of the severed estate, arbitrarily, capriciously, oppressively, or wantonly and thereby depriving the other of their or its respective estates, but each may use the respective estate in a reasonable, prudent manner, having due regard to, and consistently with, the interest and rights of the other."

The same must apply here. The owner of the mine did not have the right to run water from the mine into the stream in utter disregard of the rights of the owner of the surface if this could be avoided by ordinary care or by a reasonable expense on his part as above defined. If his violation of his duty in this respect injured the lowland, and the injury was not permanent, the measure of recovery was the reasonable diminution in the fair rental value of the land up to the bringing of this action by reason of the unreasonable use of the stream as above defined. He is not responsible for a reasonable use of it. If the injury was permanent, the fact should be considered by the jury in determining the amount of permanent injury to the land. The court should have so instructed the jury. If the jury find that any part of the injury is temporary, they will say by their verdict what part. if any; if temporary and the amount allowed therefor.

3. There was proof for the plaintiff that the well at the house, which furnished the water for the family, was made bad by the foul water from the mine getting into it. The plaintiff's proof tended to show that in some way the water from the branch had seeped into the well; but the well was 51 feet from the branch. The bank of the branch was 6 feet high, and there was no evidence anywhere of any opening in the land to take the water into the well. It was a clay soil, and the facts are strongly persuasive that the foul water in the well came into it by underground channels from the mine. The rule on this subject is thus stated in 18 R. C. L., p. 1241, section 138:

"Mining must also interfere more or less with those subterranean streams and percolations of

water which appear upon the surface as springs and to say that the owner of the substrata shall be accountable in damage for their disturbance is to say, in effect, that he shall have no use whatever of his minerals. Accordingly it has been held that the grantee of minerals beneath the surface is not liable to the owner of the surface for the loss of springs occasioned by the ordinary working of the mine.'' See also, People's Gas Co. v. Tyner, 131 Ind. 277, 31 N. E. 59, 16 L. R. A. 443, 31 Am. St. Rep. 433 and note; Coleman v. Chadwick, 80 Pa. 81, 21 Am. Rep. 93; Wheatley v. Baugh, 25 Pa. 528, 64 Am. Dec. 721 and note.

The defendant is no more responsible for the foul water from the mine getting into the well than it would be in the case of a spring. If the foul water got into the well simply by percolation under the ground, it was not liable for this. There was no evidence on the trial showing that the defendant knew, or in the exercise of ordinary care should have known or anticipated, that the water from the branch would get into the well. The clay bank was 6 feet high and 51 feet wide. The liability of the defendant here for the water is only a liability for the failure to exercise ordinary care, and there is nothing in the proof warranting the conclusion that the injury to the well from the branch water should have been anticipated by the defendant. The court therefore under the evidence should have peremptorily instructed the jury to find for the defendant as to the well.

Although Louisa Hayes testified in the action, her husband, Arch Hayes, may testify for her as to any matter which he transacted as her agent when she does not testify as to this transaction, under section 606 of the Civil Code of Practice.

Appellant complains that John Dills, a neighbor, and T. J. Davis, appellant's mine foreman, were not permitted to testify and give their opinion as to what caused the trouble in the well. Neither of these witnesses testified to facts qualifying him to speak as experts in hydraulics. They were properly allowed to testify to all the facts they knew, but their opinions were properly not admitted.

Judgment reversed and cause remanded for a new trial.

The whole court sitting.