# Kentucky West Virginia Gas Co. v. Crum.

(Decided March 15, 1935.)

COMBS & COMBS for appellant.

J. B. CLARK and JASPER PREECE for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

On December 5, 1931, appellee began an action against appellant claiming damages due to trespass upon land which he had bought from his father Adam Crum in 1912, and which was then, and had been at all times since its purchase, in his possession.

The petition alleged that the appellant during the years 1930 and 1931 had "willfully and knowingly and without any right or authority to do so, and against his will and without his consent," entered and trespassed upon his property and "laid over his lands pipe lines for the purpose of conveying gas not produced on his lands, but on adjacent property, for the purpose of accommodating gas from surrounding leaseholds."

Appellee claims that in constructing the pipe lines appellant "negligently and carelessly dug ditches, bell

holes, threw rocks and other debris upon said lands, adjacent to said lines, loaded and unloaded pipes upon the bottom lands, cut down timber, fences, up-rooted posts and did divers and sundry damage to fruit trees and growing crops.''

It is also alleged that appellant failed to bury its pipes; that it dug ditches, hauled over his land with trucks and wagons in dry and wet weather, thereby causing his land to wash away, and injuring its fertility. For such alleged damages appellee asked and the jury awarded him a verdict for $500, and from the court's judgment appeal was taken, and it is now urged that the verdict of the jury is flagrantly against the evidence, and that the court erroneously instructed the jury.

Appellant demurred to the petition, and also filed a motion to require appellee to state more specifically the various items of damage alleged and the amount sought on each item. The court overruled the demurrer but sustained the motion, though there is an entire absence from the record of any amendment or bill of particulars.

In due time appellants answered, first by way of denial of the allegations of the petition, and further affirmatively that the forty acres owned by Meredith Crum formerly belonged to a larger tract owned by Adam Crum, appellee's father and immediate grantor; that in 1909, prior to the grant to appellee, John C. C. Mayo had purchased from Adam Crum the fee in all minerals on the entire tract; and that the transfer included extensive mining rights and such growing timber as might be necessary for purposes of producing and marketing the minerals. Easements were also granted to enter and prospect; to construct roads, pipe lines, telegraph lines; the right to use the land in any way which was deemed necessary and convenient to the grantees for the purpose of producing and transporting minerals of every kind, not only from grantor's lands but from adjacent property. In short, the grant herein was similar if not identical to the one discussed in McIntire v. Marian Coal Co., 190 Ky. 342, 227 S. W. 298, 300, which is of that class known as the modern mining right grants, of which the court said:

"This is a hard and apparently broad grant, but the parties grantors had the right, power, and ca-

pacity to make such a contract, and, having done so, both they and their grantees are bound thereby."

Suffice it to say of the grant here, without taking the time to enumerate the various rights extended, it covered almost every right conceivable, and it was further provided therein that the grantee being owner of such rights should be free from any and all liability of claim of damage to the plaintiff or any one else occasioned by or resulting directly or indirectly from such use or occupation or the exercise of said rights or privileges.

We are not faced here with any question of title, either of appellee in his forty acres, or of appellant to its title to the minerals thereunder through the conveyance from Adam Crum, these facts having been agreed of record. Therefore we have only the alleged errors committed by the court upon the trial of the case to consider.

The proof shows that appellant first entered Crum's lands some time in 1930 for the purpose of drilling a gas well, which was done, and it also appears from the proof that this well was a producing one. Either prior to that time or later, the appellant brought in producing wells on immediately adjacent property. All the damages alleged to have been done appellee's land were occasioned by the entry for drilling purposes and for laying pipe lines for conducting the gas. As we have gathered from the record, aided by a blueprint, there was constructed over appellee's land a 4-inch pipe line for a distance of 41 1/3 rods, where it was tapped by a 3-inch pipe line running in the same direction as the 4-inch line for a distance of 86 rods; a 3-inch line going to the Crider well 36½ rods, and a 2-inch line connecting the Crum well with the main line, running a distance of 24½ rods. With respect to the length and breadth of appellee's land the pipe lines assume the shape of an inverted cross.

From an analysis of the proof it is first claimed that appellant entered appellee's land and built its pipe lines across his land without right; that it dug ditches and threw rocks and debris on the adjacent lands; it unloaded and loaded pipe and other equipment on the bottom lands; fencing was removed or cut down as were

some trees. Damage was done to his potato and corn crop, and a great deal of hauling was done over the lands in wet and dry weather. As we read the proof, appellee wants damages because the gas pipes were not buried "plough deep," and then wants damages because the appellant dug ditches for the purpose of burying the pipes.

Summing up this case by comparison with other cases decided by this court construing rights and grants such as are here involved, and hereinafter cited, and some of which granted rights are identical with those here involved, the court below did not grasp the proper conception of the meaning of those decisions.

There was no allegation that the constructing of the pipe lines, the going on the land for that purpose, the digging of ditches, or laying the pipe lines on top of the ground where a line went for a short distance over a cliff or through timbered land, or the loading, unloading of trucks on appellee's land, or any one of these things, were done by appellant "arbitrarily, wantonly, or maliciously," Pike-Floyd Coal Co. v. Nunnery, 232 Ky. 805, 24 S. W. (2d) 614, 615; Case v. Elk Horn Coal Corporation, 210 Ky. 700, 276 S. W. 573. And while the petition alleges that all the acts complained of were negligently and carelessly done, there is no sort of effort to prove negligence or carelessness. Indeed, from a reading of the proof offered by appellee it may be gathered that all the complained of acts were performed in a careful and prudent manner, as is also shown by proof of appellant.

However, apparently there were some damages for which the appellee might recover, even under the broad grant under which appellant was operating. These items consist of the destruction of potatoes and corn and some timber, and failure to replace a short string of fencing. It seems that in going over his land it was necessary to lay back some fencing for the widening of a roadway. The company also cut some small timber which it does not claim to have used in its construction work, or was reasonably necessary to be cut in the exercise of their easement rights, and also destroyed the growing crops mentioned. The highest figures proven on the cost of replacement of the fence was $40, though appellee says it required the purchase of but very little new material, and it took only two or three days to

do the work of relaying the fence. Appellant says Crum offered to relay it for $6. As to the timber cut, appellee and his neighbors fix the value at from $50 to $75; appellant's proof is that it was worth nothing, or at the most $5. Appellant could not estimate either in bushels or acres the quantity of corn or potatoes destroyed or estimate their market value. His highest figure on the value of both corn and potatoes was $7 or $8, and accepting the very highest estimate the alleged damage was less than $150.

Therefore, taking the view that the company could not be held liable for the damages caused by building its lines and hauling over appellee's land, as described, it is apparent that the verdict of the jury was flagrantly against the evidence. This would, perhaps, be the case if there were included the elements of damages we have eliminated from consideration, since it is shown by appellee that he only listed for assessment his entire forty acres at $4 per acre, which value had been raised to $5 by the supervising authorities.

The excessive damages awarded by the jury probably arose from the admission of certain incompetent evidence, over the continued objection of appellants, and a faulty instruction given by the court. On the trial appellee and nearly every one of his witnesses were permitted to give to the jury their opinion as to the fair market value of the entire tract of forty acres prior to the entry by appellee and the building of the pipe lines, and the value upon its completion. Due to the fact that appellant had under its grant the right to do most of the things complained of, i. e., building its lines and maintaining them, the right to haul over the lands and erect equipment necessary and convenient for its purposes, this character of evidence should have been excluded from the jury. The jury was allowed to consider these matters under instruction No. 1, whereas the instruction of the court, under the facts presented, should have limited the jury's consideration of damages to the fair market value of the timber, if same was destroyed not in the reasonable exercise of appellant's easement rights, the corn and potatoes at the time of their destruction, and a fair and reasonable cost for the replacement of the fence and its restoration to its former condition. There was also much proof to the effect that some of these pipes were

laid across appellee's land to bring out gas from some adjoining tracts. Under the deed exhibited this right was specifically granted, and the effect of such a grant has been upheld by this court, in cases where the mineral rights in adjacent lands had been acquired subsequent to the grant in question. United States Cast Iron Pipe & Foundry Co. v. Henry Vogt Machine Co., 182 Ky. 473, 206 S. W. 806, quoted in the recent case of Wells v. North East Coal Co., 255 Ky. 63, 72 S. W. (2d) 745, which latter case construed a Mayo mineral deed, apparently identical with the one here in question, and which case is conclusive on each and every question rasied on this appeal. If on the return of the above case for retrial the facts developed are no different, the court should limit the jury's consideration to the value of items mentioned. The case is remanded for a new trial consistent with the foregoing expressed views.

Judgment reversed.