## City of Hazard v. Eversole et al. *

Nov. 24, 1939.

622

W. E. Faulkner for appellant.

Scott E. Duff and W. C. Eversole for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

Claiming to be the owner of two tracts of land, on one of which is situated their residence, and on the other, three dwelling houses rented to tenants, appellees, on September 2, 1936, instituted this action against the City of Hazard and D. D. Carr, seeking a recovery of $18,000 damages alleged to have been sustained as a result of the wrongful appropriation by the City of appellees' property for sewerage purposes, the creation and maintenance of a nuisance through the discharge of sewerage into a branch on the land and on to the land itself, and the persecution and mistreatment of appellee's tenants by the City's agents, "all done for the wilful and

malicious purpose of damaging and injuring the plaintiffs in the enjoyment of their property." After a motion of the City to require the appellees to elect which of the several causes of action set forth in the petition they would prosecute had been overruled, Carr and the City filed separate demurrers to the petition. Carr's demurrer was sustained, and that of the City was overruled, whereupon, the City answered traversing the petition and pleading affirmatively in separately numbered paragraphs appellees' lack of title to the property in question, that the nuisance arising from the bad odors complained of by appellees arose from unsanitary conditions and lack of toilet facilities in the three tenant houses referred to, and that Carr was the health officer of Perry County and in that capacity had condemned the use of the three tenant houses and procured a warrant for the arrest of appellees and their tenants for so using the houses and for maintaining open and unsanitary toilets. The Court sustained demurrers to the two last mentioned pleas of the City, and, by agreement, the City's affirmative allegation that appellees did not own the property was controverted of record. A trial of the issues thus formulated resulted in a verdict for the appellees in the sum of $1,000.

The testimony introduced by the appellees at the trial was to the effect that the appellees' residence was situated on the rear of one of the lots which they claimed to own and that this lot extended from Combs street on the east to the middle of the north fork of the Kentucky River on the west; that the three tenant houses were located on the other lot which was situated on the east side of Combs street; and that the odors of which appellees complained, and which they alleged destroyed the enjoyment of their home and diminished the rental value of their tenant houses, arose from filth which was discharged from the sewer line into a culvert under Main street and on to that part of appellees' property which lay between Main street and the River, and which, during the five years preceding the institution of the suit, was vacant property. On the other hand, the City introduced much testimony showing that the odors which constituted the nuisance arose from the open toilets, or rather sheds, used as privies by appellees' tenants, which became so indescribably filthy that the health authorities of the County had been compelled to take action in an attempt to abate the nuisance thus created by the

appellees. There was also testimony that the odors arose from other sewers discharging their contents on other portions of the river bank and from the river itself which had been polluted by discharges from mining camps outside the City. We are unable to describe accurately the locations of the various properties or their distances from the sources of the offensive odors, because of the failure of counsel to make part of the record the maps or charts referred to by the witnesses in testifying, and, although the evidence is unsatisfactory and perhaps insufficient, we would be inclined to uphold the verdict of the jury awarding damages if the only question for our determination was whether the odors complained of were caused by the discharge of sewerage on the river bank property of the appellees, or by the maintenance by them of open privies on their tenant property. But the following undisputed facts appear, which, in our opinion, necessitate a reversal.

According to the testimony of the appellee W. C. Eversole, the sewer was constructed by the City and finished "about 1925" and "was dumped right at the mouth of the storm sewer that carried the water that came down that branch known as the Susan Eversole Branch it will come out there and about 18 months or two years ago they extended this sewer, this sanitary sewer on out to the edge of the river," from which, and other testimony, it appears that the nuisance complained of existed approximately eleven years before the suit was instituted, and had been abated by the City approximately a year before the institution of the suit. On cross-examination, the appellee W. C. Eversole admitted that he gave the City permission "to go down Newland Avenue with this sewer," but denied that he had ever given permission to the City to dump the sewerage on his property.

The Court instructed the jury as follows:

"If you shall believe from the evidence that the sewer mentioned in the evidence, as it was originally constructed and before it was extended on to the river as mentioned in the evidence, directly and proximately caused the plaintiffs discomfort and inconvenience in the use and enjoyment of the house occupied by them as a residence by the creation of a stench or odor arising from the point where the sewage was deposited, then you will find for the

plaintiffs such a sum in damages as you may believe from the evidence will fairly and justly compensate them for such discomfort and inconvenience arising therefrom, if any, and between the 2nd day of September, 1931, and the date when the sewer was extended on to the river, but not to exceed the sum of $18,000.00 claimed in the petition. Unless you so believe you will find for the defendant.

"You cannot find for the plaintiffs for any discomfort or inconvenience which may have occurred prior to Sept. 2nd, 1931, nor after the sewer was extended on to the river, nor can you find for them for any discomfort and inconvenience in the use of their property resulting from any other cause than that stated in Instruction No. 1 above."

The Court correctly limited any recovery by appellees to the damages sustained during the period beginning five years before the institution of the suit and terminating on the date the jury might believe the City abated the nuisance by extending the sewer to the river edge, but erred in stating the causes for which damages might be awarded. If a nuisance is a permanent nuisance the measure of damages is the depreciation in the market value of the property injured. If the nuisance is temporary and capable of correction at reasonable cost, the measure of damages, where the property is occupied by the owner, is the diminution in the value of its use during the continuance of the nuisance, and if the property is not occupied by the owner, the measure of damages is the depreciation in the rental value during the continuance of the nuisance. City of Madisonville v. Nisbit, 239 Ky. 366, 39 S. W. (2d) 690; Standard Oil Co. of Kentucky v. Bentley et ux., 260 Ky. 185, 84 S. W. (2d) 20. In no event is it proper to permit a recovery of damages for annoyance, discomfort, or sickness, as these elements are necessarily included in the diminution of the value of the use, although proof of such annoyance, discomfort, and illness, is admissible as affecting the value of the use. Gay v. Perry, 205 Ky. 38, 265 S. W. 437.

The nuisance complained of was a temporary one as is shown by the fact that it was remedied by extending the sewer pipe line to the edge of the river, a distance of about 100 feet. On another trial the Court will properly instruct the jury on the measure of damages

applicable in cases of temporary nuisances as above outlined.

Appellant's counsel, whom, it should be noted, did not represent the City of Hazard at the trial in the Circuit Court, complains on this appeal of the admission of incompetent testimony on behalf of appellees, and of the rejection of competent evidence offered by the City. Since the nuisance complained of was a temporary one, the appellees were not entitled to recover for any depreciation in the market value of the property, but only for depreciation in the value of its use during the prescribed period. The Court should not have admitted testimony that the property was worth $25,000 before the sewer was constructed and only $3,000 at the time appellees testified, or any testimony relative to the alleged depreciation in the market value of the property caused by the construction or maintenance of the sewer. However, we are of the opinion that the Court correctly refused to permit the City to introduce in evidence the notices served on the appellees and their tenants on May 14th and August 6, 1936, reciting the unsanitary condition of the tenant property and requiring them to vacate it. It was competent to prove that such notices were sent, but the notices themselves were not admissible unless their contents had been denied.

The Court should have sustained the City's motion to require the appellees to elect, but this error was cured by the submission of only one issue to the jury. On the return of the case to the lower court each party will be permitted to amend its pleadings.

Appellees moved this Court to strike the Bill of Exceptions from the record upon the ground that it was not filed within the time prescribed by Section 334, Civil Code of Practice. The judgment was rendered October 14, 1937, and upon overruling the motion for a new trial, the Court gave appellant until the 24th day of its next November term to prepare and file its Bill of Exceptions. On December 17, 1937, which was the twenty-third day of November term, the Court on its own motion, and by an order reciting the necessity therefor, extended the November term so as to include and close on Saturday, January 29, 1938. On December 16th, the Court had entered an order reciting that it would be impossible for the official reporter to transcribe the evidence in this case by the twenty-fourth day of the term,

and extended the time for the filing of appellant's bill of exceptions to and including the 15th day of January, 1938, which would be within an "extended or call term of this court;" and on January 6, 1938, the Bill of Exceptions was filed. Since the Court had full authority under Section 971-13, Kentucky Statutes, to extend the November term of Court, and since this extension did not conflict with any other court term in the district, it is apparent that the Bill of Exceptions was filed during the term succeeding the term in which the judgment was rendered, that is, within the November term as extended. Hence, the motion to strike the Bill of Exceptions is overruled.

Judgment reversed.