COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

G. C. BAIRD and Carrie Baird, his wife, Appellees.

Court of Appeals of Kentucky.

May 30, 1969.

Rehearing Denied Oct. 3, 1969.

John Breckinridge, Atty. Gen., Don Duff, Acting General Counsel, Dept. of Highways, Frankfort, Eugene H. Clark, Manchester, Robert E. Cato, Somerset, for appellants.

J. B. Johnson and J. B. Johnson, Jr., Williamsburg, for appellees.

CULLEN, Commissioner.

G. C. Baird and wife recovered judgment against the Commonwealth, Department of Highways, in the amount of $3,000, for damages to the Baird property found by a jury to have resulted from surface water the flow of which was accelerated by construction of an I–highway on a right-of-way adjoining the Baird property. The department has appealed, asserting various grounds of error, the first of which is that the department's motion for a directed verdict should have been sustained because the evidence did not establish any basis for liability on the part of the department.

The Baird property consisted of a small parcel of land on which was located an upholstery shop. It lay down grade from a valley into which rainwater flowed from surrounding hills. Prior to construction of the highway the water flowed down the valley through a small natural drain which continued along one side of the Baird property to a culvert under the highway on which the Baird property fronted. The evidence was that before the construction of the highway the drain along the side of the Baird property handled the flow of surface waters with no difficulty and there had never been any overflow or flooding problem.

The highway department acquired a right-of-way across the valley, adjoining the back line of the Baird property, for construction of an I–highway. The highway then was constructed, consisting of two double-lane roadways, each one resting on a 33-foot fill. The fills rans parallel to the back line of the Baird property and crossed at right angles the line of the old drain in the valley. To provide for the disposition of surface water the department installed a 42-inch culvert or tile running beneath both of the fills, along the line of the old drain, and terminating at the back line of the Baird property, so that the flow of· the water would be from the mouth of the culvert or tile into the natural drain running along the side of the Baird property. In addition, the department constructed a concrete gutter running diagonally down the side of the fill nearest the Baird back line, and terminating at the same point as the culvert, so that water from the gutter also went into the natural drain alongside the Baird property.

The evidence for the Bairds was that the flow of water into the natural drain by the side of their property was so accelerated by the highway construction that the drain could not handle it; in times of heavy rains the surface water flooded through the upholstery shop, filling the floor with mud and damaging the equipment and supplies; and even in times of normal rains the surface water seeped through the walls of the building and permeated the soil. Even the witnesses for the Commonwealth (except one whose testimony will be discussed at a later point herein) admitted that the flow of water coming from the culvert and gutter was too much for the natural drain to handle. The department, after the instant suit was filed, endeavored to alleviate the problem by constructing a wooden dike near the end of the culvert, but it did not prove to be of any real benefit.

The evidence as to damages (based on "before" and "after" values) was that the value of the Baird property before the wa-

ter problem arose was around $3,800 and its "after" value was only $1,000, making a difference of $2,800. In addition, the Baird's proved damage to their personalty in the upholstery shop of several hundred dollars. As hereinbefore stated, the verdict was for $3,000.

■ The Department of Highways rests its first argument on this appeal, that it was entitled to a directed verdict, on the proposition that an upper property owner is not liable to the lower property owner for damage from increased flow of surface water unless the upper owner has tapped a new or additional watershed area. There was no proof of such tapping of a new or additional area in this case, so the department says it has no liability. The argument is without merit, because the liability of the upper owner is not so limited. As clearly stated in Klutey v. Commonwealth, Department of Highways, Ky., 428 S.W.2d 766, the upper owner under certain conditions may be liable for acceleration of the flow of surface water without having tapped a new watershed. We are unable to comprehend how the department can argue (as it has) that Klutey limits liability to instances of tapping of new watersheds.

The instant case was tried in the circuit court before Klutey was published. As a consequence, the instructions were prepared with the law being in the state of confusion related in the opinion in Klutey. The appellant complains of error in the instructions. However, as shall hereinafter be explained, we have concluded that the plaintiffs were entitled to a directed verdict on liability, so we need not consider whether there was error in the instructions.

■ Under the rule stated in Klutey there is to be a *balancing* of factors, in main part consisting of weighing the reasonableness of the use of the land drained (or the "utility" of such use) against the gravity of the harm to the land receiving the burden of the drainage. In most in-

stances this would be a matter for the jury, under instructions such as those outlined in George v. Standard Slag Company, Ky., 431 S.W.2d 711. However, in cases of *extremes*, the liability or nonliability may be determined as a matter of law.

■ In the instant case the damage to the Baird property was extreme—its gravity was severe. The evidence was that the water flooding had destroyed almost 75 percent of the value of the Baird property. We think that as a matter of law damage of such proportions must be considered to outweigh the admitted reasonableness or "utility" of the highway department's use of its right-of-way. In the Restatement of the Law of Torts, Sec. 828, Comment on Clause (c), p. 255, it is recognized that even where the defendant has done everything reasonably possible to avoid the damage he still may be liable if the "harm is too great."

It may be argued that the result we reach here is inconsistent with that reached in *Klutey,* where the lower court denied injunctive relief to the owner of the lower land and this court affirmed. However, there are two clear distinctions between the two cases. First and foremost, here we have evidence of destruction of a major portion of the value of the lower land, whereas in *Klutey* the evidence did not show that there was damage of major proportions over and above the amount of compensation for water damage which the landowner had received in a prior condemnation award. Second, *Klutey* was a suit for an *injunction,* whereas the instant action is for *damages.* Obviously, the granting of an injunction might reverse the balance of harm, putting the upper owner in a position of detriment far outweighing the amount of damages to the lower owner.

We come now to other grounds of error raised by the appellant.

■ It is contended that the damage to the Baird property was not in fact extensive or substantial; that the cause of the flood-

ing could easily and cheaply have been remedied; and therefore not only is the award of $3,000 damages excessive but the case should not have been submitted on the basis of difference in value but rather on the cost of remedying the situation. The argument is based on the testimony of one witness who said that the drain alongside the Baird property could have been cleaned out and an earth dike erected for about $100, and that this would solve the problem. It is our opinion, however, that the testimony of the witness was not credible. He was not an expert on drainage, but simply a real estate appraiser. The engineer witnesses for the highway department admitted that the culvert and gutter were emptying too much water into the drain for it to handle. The department had attempted without success to solve the problem by erecting a wooden dike. Had there been such a simple solution as suggested by the witness surely the Bairds would not have stood by and watched their shop be inundated repeatedly nor would the highway department have subjected itself to this litigation. All of the circumstances militate against the credibility of the opinion of the witness in question.

Finally, the appellant department argues that the Bairds were estopped to assert a claim for water damage by reason of the fact that compensation for potential water damage was included in the sum they had received for selling to the department, for right-of-way for the highway, part of an adjoining tract of land owned by them. The Bairds owned a residential lot adjoining the lot on which the upholstery shop was located, having acquired the two lots at different times. Part of the residential lot was needed for the highway right-of-way, and a condemnation suit was filed. After negotiations, the Bairds deeded the desired parcel to the department and an agreed order was entered dismissing the condemnation suit. Neither the deed nor the agreed order made any reference to water damage. There was no testimony that potential water damage even was dis-

cussed. While there was some evidence that the Bairds were shown the plans for the highway, it was admitted even by the highway engineers that no ordinary person could tell from those plans what the drainage treatment would be. On the estoppel point the case is comparable to Commonwealth, Department of Highways v. Robbins, Ky., 421 S.W.2d 820, and we hold now, as we did there, that the circumstances were not such as to estop the owners. See also Commonwealth, Department of Highways v. Litteral, Ky., 319 S.W.2d 458.

The judgment is affirmed.

All concur.