**KENTLAND–ELKHORN COAL COM-
PANY, Appellant,**

v.

**Alonzo CHARLES and Mary Charles,
Appellees.**

Court of Appeals of Kentucky.

June 14, 1974.

Rehearing Denied Nov. 15, 1974.

John M. Stephens, Stephens, Combs & Page Pikeville, for appellant.

Jean L. Auxier, Lawrence R. Webster, Pikeville, for appellees.

CULLEN, Commissioner.

Alonzo Charles and his wife, owners of the surface of a tract of land, recovered judgment in the amount of $10,000 against Kentland-Elkhorn Coal Corporation, owner of the mineral rights under that tract and under a substantial adjoining acreage, as damages resulting from the operation of a

coal preparation plant, in connection with a mine, on land adjoining the Charles tract. Although the instructions were imprecise and confusing as to the basis of liability, the nature of the damages recoverable, and the measure of damages, it is apparent that the damages of $10,000 were for depreciation of the market value of the Charleses' property and were awarded on the theory of a permanent nuisance.

Appealing from the judgment, Kentland-Elkhorn voices a number of claims of error, the first of which is that its operations were within the authority of the "broad form" deed by which the company acquired the mineral rights (through the same common grantor through whom the Charleses acquired their surface ownership), and therefore the company was absolved of any liability. Kentland-Elkhorn maintains that it could be held liable only on proof that its acts were oppressive, arbitrary, wanton or malicious, and that there was no such proof in the instant case.

The decisions of this court have limited the liability of the owner of the mineral rights under the standard "broad form" deed, for surface damages, to those damages caused by oppressive, arbitrary, wanton or malicious action. See Buchanan v. Watson, Ky., 290 S.W.2d 40, and Martin v. Kentucky Oak Mining Company, Ky., 429 S.W.2d 395. And in at least two cases the court has said that the fact alone that an operation constituted a *nuisance* would not impose liability on the mineral owner. See Tolliver v. Pittsburgh-Consolidation Coal Co., Ky., 290 S.W.2d 471, and Consolidation Coal Co. v. Mann, 298 Ky. 28, 181 S.W.2d 394.

The words "arbitrary", "wanton" and "malicious" have well established meanings in the law, and they denote conduct that is in contemptuous disregard of the rights of others or in some instances a deliberate intent to cause harm. "Oppressive," on the other hand, is not so well defined as the other three words, and it differs in emphasis in that it bears on the *effect* of the conduct as well as on the attitude of the actor. One dictionary definition of "oppressive" is "unreasonably burdensome;" another is "harsh, rigorous or severe." In some places in some of the opinions of this court, cf. Blue Diamond Coal Company v. Neace, Ky., 337 S.W.2d 725, and Martin v. Kentucky Oak Mining Company, Ky., 429 S.W.2d 395, the basis of liability of the mineral owner was said to be "arbitrary, wanton, or malicious" action, omitting "oppressive," but it is clear that the omission was not a deliberate holding that "oppressive" action was no longer to be a basis for liability.

■ The property right of the mineral owner as to the *surface* of the land, under a standard "broad form" deed, is to use the surface in any manner deemed by the mineral owner to be "necessary or convenient" for the exercise of the right to produce the minerals. The decisions of this court fixing "oppressive, arbitrary, wanton or malicious" conduct as the basis for liability of the mineral owner obviously have reference to acts done, or the manner of doing them, under the claim of *convenience*, because if the acts done and the manner of doing them are *necessary* in the sense that there is no other way the right to remove the mineral can be accomplished, the mineral owner's right to perform those acts in that manner is unqualified. Cf. Blue Diamond Coal Company v. Neace, Ky., 337 S.W.2d 725. Acts necessary to be done in a particular manner to recover the mineral could not be "arbitrary, wanton or malicious," and even though they might turn out to be "oppressive" they would not furnish a basis for liability because the surface owner by his deed has subordinated his surface rights to those of the mineral owner at least to the extent that the mineral owner is entitled to recover the mineral by some method. Cf. Martin v. Kentucky Oak Mining Company, Ky., 429 S.W.2d 395.

■ In regard to liability for acts done under the claim of convenience, it would

appear that no problem of application of the measure of liability ordinarily will arise where the conduct is claimed to be "arbitrary, wanton or malicious." The question simply is whether the mineral owner has chosen a harmful procedure when one less harmful was equally available. And it makes no real difference whether the complaint is of the method selected or of the manner in which the method is employed. The same is not true, however, when the conduct is claimed to be "oppressive." Then the concept of *reasonableness* enters in, and it is necessary to invoke a set of standards or employ a group of factors to measure the reasonableness of the particular conduct involved. And it may be that the standards or factors to be used in measuring reasonableness as to methods selected should be different from those used in measuring reasonableness of the manner in which the method is employed. To be specific, the determination of whether in a particular case it is reasonable (not oppressive) to remove coal by the methods of strip mining or auger mining may depend on one set of standards or factors, while the determination of whether a particular method, such as strip mining, was so used as to be oppressive will depend on a different set of standards or factors.

In the instant case there is no contention that Kentland-Elkhorn does not have the right to maintain a coal preparation plant on the land covered by its mineral deed—there is no complaint of the selection of a coal preparation plant as a facility for recovering the coal. The claim is that the coal preparation plant is being *operated or maintained in such a manner* as to be oppressive. That being the narrow issue, we shall confine our consideration to the question of the standards or factors to be used in measuring oppressiveness in this limited situation, leaving for another time the question of whether a set of standards or factors should be formulated for measuring reasonableness in the selection of a method of recovering minerals.

■ Since, as hereinbefore indicated, oppressiveness involves considerations of reasonableness, which in turn invoke a balancing of interests, and since this court has developed in the law of nuisances and the law of water rights a concept of unreasonable harm which we think would well be adapted to supply a measure of "oppressiveness" in the law of mineral rights, we have concluded that the foregoing concept should and will be applied in the type of mineral-right situation here involved, where there is complaint of damage from unreasonableness in *the manner of use* of a method of mineral recovery. It appears to us that the nuisance approach is appropriate in this situation. For convenience, the salient features of the nuisance approach are hereinafter stated.

In Louisville Refining Company v. Mudd, Ky., 339 S.W.2d 181, this court restated the law of nuisances as related to a property owner's use of his property which, though lawful, causes injury to the property of another. The basic proposition adopted by the opinion in that case was that:

> " * * * the existence of a nuisance must be ascertained on the basis of two broad factors, neither of which may in any case be the sole test to the exclusion of the other: (1) the reasonableness of the defendant's use of his property, and (2) the gravity of harm to the complainant. * * * "

The opinion outlined the substance of appropriate instructions to be used in submitting a nuisance question to the jury.

■ Subsequently, in George v. Standard Slag Company, Ky., 431 S.W.2d 711, a specific form of instructions was set forth. Those instructions include, as factors to be considered in determining whether the annoyance to the plaintiff is unreasonable: (1) The lawful nature and location of the defendant's facility; (2) the manner of its operations; (3) its importance and influ-

ence on the growth and prosperity of the community; (4) the kind, volume and duration of the annoyance; (5) the respective relations of the parties; and (6) the character and development of the neighborhood and locality in which the properties are located.

■ The underlying principle of the *Mudd* and *George* cases is that an owner may not use his property in such a way as *unreasonably* to injure another's property. The same principle was invoked in Klutey v. Commonwealth, Department of Highways, Ky., 428 S.W.2d 766, and Commonwealth, Department of Highways v. Baird, Ky., 444 S.W.2d 541, in relation to the casting of surface water on a lower landowner.

■ The fact, as in the instant case, that the mineral owner has the *right*, by deed, to operate a coal preparation plant on the surface of the land, does not militate against use of the unreasonable-damage concept because in the nuisance cases the defendant has the *right* to erect the structure complained of on his land, and in the water cases the upper owner has the *right* to cast the water on the lower owner. In the context of this discussion we are not concerned with a determination of what rights the mineral owner has; our concern is only with the liability of the mineral owner to respond in damages for an unreasonable exercise of his rights.

Our holding that the nuisance approach should be used in the type of case here presented has the effect of overruling Tolliver v. Pittsburgh-Consolidation Coal Co., Ky., 290 S.W.2d 471, and Consolidation Coal Co. v. Mann, 298 Ky. 28, 181 S.W.2d 394, to the extent that they hold that the mineral owner cannot be held liable to the surface owner for creating a nuisance.

■ Whether a particular case will be one for the jury will depend on whether there are issues of fact on which reasonable minds could differ, subject to the general principle that there must be sufficient

evidence of an over-all inequity to the complainant in order to justify its submission. See Louisville Refining Co. v. Mudd, Ky., 339 S.W.2d 181; Louisville & Jefferson County Air Board v. Porter, Ky., 397 S.W.2d 146.

■ We think the evidence in the instant case created a jury issue as to liability of Kentland-Elkhorn, on the unreasonable-damage theory. The evidence for the landowners showed gravity of harm in that the coal preparation plant cast coal dust over their dwelling, garden and a rental house in excessive quantities such as to render the property practically uninhabitable. As concerns reasonableness of use the evidence with respect to the factors to be considered under *George* would have warranted a finding of unreasonableness of Kentland-Elkhorn's use of its property rights. *George* says that whether the plant is being operated in a customary and prudent manner, and whether the defendant is doing all that it could reasonably be expected to do in order to prevent or minimize the annoyance complained of, are pertinent elements. There was evidence here as to a period of uncustomary, nonprudent operation, and that Kentland-Elkhorn did not do all it reasonably could be expected to do to minimize the harm.

■ Although we conclude that it was proper to submit the case to the jury, we are reversing the judgment because of error in the instructions (to which appropriate objections were made). The instructions presented a confusion of two different theories of liability. The first instruction submitted a *negligence* theory in which damages to the plaintiffs' *health* were included as elements of recovery although the measure of damages was stated to be the difference in market value of the land and improvements. The second and third instructions submitted a distortion of the *Mudd-George* theory of liability, in which the *George* instructions were reversed in order and the efficacy of the instruction as to the circumstances to be con-

sidered by the jury was destroyed by the qualification "so long as its lawful operation does not render damage to the health or damage to the dwelling house or quiet enjoyment of the plaintiffs."

■ Another error in the instructions consisted of their submission of the issue on the theory of a *permanent* nuisance, with the measure of damages being the difference in market value of the plaintiffs' property. For the reasons hereinafter stated, we think the case should have been submitted as one of temporary nuisance, under which the measure of damages, as to property occupied by the owner, is the diminution in the value of the use during the continuance of the nuisance, and as to rental property is the reduction in rental value during that period. See Adams Construction Co. v. Bentley, Ky., 335 S.W.2d 912; Fidelity Trust Company v. Shelbyville Water & Light Company, Ky., 110 S.W. 239.

■ One test of whether a nuisance is temporary or permanent is whether the cause of the nuisance can be readily corrected or abated at a reasonable expense. See City of Ashland v. Kittle, Ky., 305 S.W.2d 768. Under that test the structure here in issue would be a permanent nuisance, because the testimony of the coal company was that the cost of modifying the coal preparation plant to eliminate the excessive emission of dust would not be economically feasible. But another test is whether the offending structure will be "relatively enduring and not likely to be abated, either voluntarily or by an order of court." See Kentucky-Ohio Gas Co. v. Bowling, 264 Ky. 470, 95 S.W.2d 1. The instant case was tried in October 1969, and the testimony for the coal company was that the coal preparation plant would be closed down in January 1971. Under that test the plant was a temporary nuisance, which means that the plaintiffs could re-

cover in the instant action only such damages as they had sustained up to the time of trial, and would be relegated to another, later action for the damages subsequently incurred up to the time of closing of the plant. See Wiser Oil Company v. Conley, Ky., 380 S.W.2d 217. In view of the relatively short period of time that was to remain for operation of the plant, at the time this case was tried, we think it was not too onerous to subject the plaintiffs to the necessity of bringing another suit for subsequent damage rather than permitting them to recover damages on a theory that the nuisance would be permanent when in fact it would not.[1]

■ On another trial the instructions should follow those outlined in *George*, modified, however, to submit the measure of damages for a temporary nuisance rather than that for a permanent nuisance. The instructions should not authorize any *recovery* for personal annoyance, discomfort or sickness of the plaintiffs, because there was no claim of damages for personal injury. On a nuisance suit, such as this, while evidence of those elements is admissible as affecting the value of the use of the property, they are necessarily included in the damages for diminution in the value of the use and are not distinct elements of damage. See Gay v. Perry, 205 Ky. 38, 265 S.W. 437; City of Hazard v. Eversole, 280 Ky. 621, 133 S.W.2d 906.

The judgment is reversed for further proceedings in conformity with this opinion.

JONES, MILLIKEN, PALMORE, REED and STEINFELD, JJ., concur.

STEPHENSON, J., concurs in the result only, by separate opinion.

STEPHENSON, Justice (concurring).

I concur in the decision that the judgment in this case must be reversed because

---

[1]. Of course if, on another trial, it should develop that the plant was not closed down but is still operating, the question of permanence of the nuisance would be open for reconsideration.

of the erroneous instructions, but I do not agree with the reasoning of the majority opinion which brings into play the law of nuisance in determining the legal rights of the parties on retrial of the case. The majority opinion poses more questions in my mind than it provides answers. The appellant asserts that the provisions of the "broad form" deed, under which its operations were conducted, absolved the appellant from liability. My view is that the rights of the parties should be resolved under the law of minerals with respect to the rights of the surface owner whose improvements are damaged by the conduct of the mining operation. In recent years, this court has denied liability for damage to improvements, and the majority opinion avoids these holdings by basing a retrial on the law of nuisance. My view is that it would better serve the parties and those who will be affected in the future to hold that the present rule as to damages to improvements be withdrawn since in my view it is an artificial rule not based on *stare decisis.*

This rule of the law of minerals had its inception in Buchanan v. Watson, Ky., 290 S.W.2d 40 (1956). *Buchanan* represented the first holding of this court that the rights reserved by the "broad form" deed to the holder of the mineral estate after severance included the unqualified right to strip mine and in effect destroy the surface without liability for damages. The land there involved was in a state of nature, no improvements. Thereafter in Blue Diamond Coal Co. v. Neace, Ky., 337 S.W.2d 725 (1960), this right was elevated to include damages to improvements and improved property in the absence of conduct in the mining operation exercised oppressively, arbitrarily, wantonly or maliciously. There a garden and other improvements were damaged.

In between *Buchanan* and *Blue Diamond, supra,* we have Bevander Coal Co. v. Matney, Ky., 320 S.W.2d 301 (1959). There the mining operation damaged the surface owner's fencing and trees, and caused other unspecified damages. The mining operator did not appeal from a jury verdict assessing these damages, probably because it never occurred to him that he was not liable for damages to improvements. The case was reversed on other grounds stated in the appeal and affirmed on the landowner's cross-appeal that he was entitled to additional damages. The opinion states that the *Buchanan* case, involving a similar deed, "is decisive of the rights of defendant to additional damages. Any claim of defendant for additional damage must be grounded upon oppressive, arbitrary, wanton, or malicious acts." The additional damages referred to in the opinion must have been damages to the surface in a state of nature as opposed to damages to improvements. Somewhere between *Buchanan* and *Blue Diamond,* it was conceived that the right to strip mine under the "broad form" deed also included the right to damage improvements and improved property without liability, absent, of course, conduct of oppressive, arbitrary, wanton, or malicious conduct. This rule was restated in Martin v. Kentucky Oak Mining Co., Ky., 429 S.W.2d 395 (1968), expressing the view that the "dominant" mineral estate contemplated damage or destruction of improved property and improvements without liability by the mine operator.

The purpose of this opinion is to point out the difference between the historical application of the law of mineral rights as applied to damage to the surface in a state of nature and damage to improvements and improved property. We do not have here a "strip mine" operation, and it would not be useful in this opinion to argue the merits of *Buchanan* as applied to damage to the surface in a state of nature. Historically in this jurisdiction, the mineral estate has been regarded as the dominant estate, and the surface is the subservient estate. The grant of minerals in the eye of the law carries with it the right to extract the minerals. This is a sound proposition. I think perhaps too much emphasis has been

placed upon the provisions of the "broad form" deed in ascribing peculiar rights to this type mineral deed as opposed to the provisions of the mineral deeds which contain a variety of provisions, some extensively detailing the rights, others providing for "only necessary and convenient" mining rights. A good argument can be made that a mineral deed providing for "necessary and convenient" mining rights is broader and ordinarily confers more rights than the "broad form" deed, which enumerates extensive rights on the theory that the enumeration of rights limits the rights to those enumerated. The "waiver of damages" clause in the "broad form" deed seems to have been given the significance which to me is unwarranted. In reading the older cases, this clause would appear to be superfluous and have no real meaning. If the right to damage is granted, there is no question of liability. Throughout the long series of cases dealing with mining rights, whether those rights be general or specific, it has been recognized that the surface may be used as necessary and convenient or in accordance with specified rights for the mining operation without liability insofar as these rights are not exercised oppressively, arbitrarily, wantonly, or maliciously.

The difficulty in reconciling the principle that the "broad form" deed absolves liability for damage to improvements and improved property with the long line of cases involving mineral rights is that until *Buchanan* the cases arising from the eastern Kentucky coal fields pertained to deep mine operations. It is of interest to note the line of "subsidence" cases. Unless specifically provided for, liability was imposed in those cases where, in the underground mining operation, coal pillars were removed causing subsidence and breaks in the surface. North-East Coal Co. v. Hayes, 244 Ky. 639, 51 S.W.2d 960 (1932), states the rule: "As we have said, the right to mine is subservient to the right of the surface owners to have the surface maintained in its natural state free from subsidence or partings of the soil * * *." This rule was deeply imbedded in mineral law in 1932 and is an exception to the right to use the surface in the necessary process of the mining operation. The "broad form" deed here enumerated subsidence rights specifically. Thus a deep mine operating under a "broad form" deed such as here could cause subsidence of the surface by pulling pillars without liability for damages.

A pertinent view of what had been considered to be the rule as to damages to improvements is contained in McIntire v. Marian Coal Co., 190 Ky. 342, 227 S.W. 298 (1921). There the terms of the mineral deed recited in the opinion appear to be a "broad form" deed. The opinion concludes that by the terms of the deed the operator could do anything necessary or convenient for the mining operation and further states:

"Undoubtedly, under the plain terms of the deed, the Marian Coal Company has the right and could by showing the necessity or convenience thereof use and occupy the whole surface of the land in question even to excluding the plaintiff and taking his house and garden, but such taking would have to be after *satisfaction or adjudged compensation for such improvements,* which is but another way of saying that the mineral estate under the deed is dominant, superior, and exclusive in every circumstance or condition where the owner thereof shall deem it necessary or convenient to make such use of the surface as the deed allows." [Emphasis ours]

This illustrates my argument that this court has historically made a differentiation between the use of the surface in a state of nature without liability for damages and interfering with improvements on the surface.

A later case speaking on the same point is Kentucky West Virginia Gas Co. v. Crum, 258 Ky. 508, 80 S.W.2d 537 (1935). There the gas company was operating un-

der a "broad form" deed which the court characterized as similar if not identical to the deed discussed in *McIntire, supra,* "which is of that class known as the modern mining right grants." There the gas company entered the land for the purpose of drilling a gas well. In the course of the operation, which included hauling equipment, digging pipelines, etc., damage was done to fencing, timber, and crops. This court reaffirmed the right of the holder of the mineral to use the surface in drilling the well and denied damages for that use, then stated:

> "However, apparently there were some damages for which the appellee might recover, even under the *broad grant* under which appellant was operating. These items consist of the destruction of potatoes and corn and some timber, and failure to replace a short string of fencing." [Emphasis ours]

This court held that the gas company could not be held liable for the damages caused by building its lines and hauling over the land, but was liable for the fair market value of the timber, corn, and potatoes at the time of their destruction and reasonable cost for the replacement of the fence.

Once again this court recognized the difference in the right to use the land in a state of nature and imposed liability for damages to improvements. At this point the "broad form" deed had not been construed as permitting damage to improvements without liability.

This case was cited in *Buchanan* in the paragraph on "waiver of damages" and further reinforces the argument that *Buchanan* went no further than to deny damages to land in a state of nature and is not authority for the later cases which deny liability for damages to improvements. The plain and simple fact is that liability for damages to improvements and improved property in the conduct of a mining operation was so well settled that no one thought otherwise until *Blue Diamond, supra.*

Finally turning to Martin, the opinion rejects estoppel as a basis for imposing liability for damages to improvements. Although not specified in the older cases cited in this opinion recognizing that liability should be imposed for damages to improvements, it is my view that this could well be the underlying basis for the rule enunciated in those cases holding that the "rights" contained in the "broad form" deed do not absolve the mine operator from liability for damages to improvements and improved property occasioned by the conduct of the mining operation.

I would impose strict liability for damages to the surface owners' improvements, improved property, and merchantable timber occasioned by the conduct of a mining operation.