## Strough et al. v. Ideal Supplies Co.

May 18, 1945.

Francis J. Hanlon for appellants.

U. J. Howard, Alex Howard and Howard & Howard for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE TILFORD— Affirming.

Appellants sued to enjoin a nuisance arising from the operation by appellee of a coal yard in the City of Ludlow, and being dissatisfied with the relief awarded, they have appealed.

The facts disclosed by the pleadings and proof are succinctly stated in the Chancellor's opinion, from which we quote the following excerpts:

"For more than thirty years defendant has owned the entire tract of land involved in this litigation where it has operated and maintained a sand and gravel pit.

"The history of this territory is that the entire tract of land was a hill or mound which defendant cut away and then built and maintained its sand and gravel pit, and developed that part of the area now occupied by these plaintiffs and their neighbors as a subdivision.

"The defendant developed the subdivision and sold lots to plaintiffs and their neighbors. These plaintiffs have lived there for a period ranging from about six to fourteen years.

"In the Winter of 1942 defendant company began operating a coal business. There are and have been three bins on defendant's premises, one of which is used for sand, another for gravel, and the third for coal.

"The Southern Railroad Company hauls the coal in flat bottom gondola cars to the premises of the defendant. The railroad switch or track is sloped and run over the bins or hoppers. The coal car is stopped over the coal bin or tipple. The gates on the bottom of the car are opened and the coal is dropped into the coal bin. From the coal bin the coal is dumped into wagons by means of a chute and delivered to defendant's customers; that coal which is not required for immediate delivery is stacked in a coal pile on defendant's premises.

"Plaintiffs in their petition allege that defendant conducts its coal business in such a manner that it causes 'large quantities of dirty coal dust to be thrown out and to permeate the atmosphere and causes loud noises to be made, to such an extent as to deprive the plaintiffs and each of them of the right to enjoy the comforts of human existence in their respective homes.'

"The prayer of the petition is:

" 'Wherefore plaintiffs pray that the defendant be enjoined from so using, maintaining and operating on its said premises said coal hopper and trucks thereon in such manner as to produce said coal dust and noise, annoyance, and injuries to plaintiffs and others similarly affected. That plaintiffs be permitted to sue on behalf of themselves and other similarly affected by said nuisance. They pray for their costs herein and for all just, proper and equitable relief to them belonging.'

"Defendant filed its answer which consisted of a general denial; then filed an amended answer which specifically denied the allegations of the petition, and by

way of affirmative pleading stated that it owned and operated the property involved in this litigation many years before plaintiffs and their neighbors built their homes. That the ground on which the homes were built was originally a sand and gravel pit owned and operated by the defendant, and that after this sand and gravel pit was reduced to the level of the street, defendant subdivided this property and sold these lots to plaintiffs and their neighbors for the purpose of building homes thereon; that the coal hopper of which the plaintiffs now complain has been in its present place of operation for more than twenty-five years.

"Defendant pleads further that before coal is dumped into this hopper it is watered, and before the coal is moved from the bin to the wagons it is again watered.

"It is defendant's further defence that plaintiffs and their neighbors live in the vicinity of the C. N. O. & T. P. Railway Company which maintain and for many years has maintained a coal yard, tipple and scrap pile, and noises made by the defendant in its business is negligible compared to the noises made by the Railroad Company.

"Defendant alleges it has invested in its property and business some $60,000.00. * * *

"Plaintiff by amended petition alleged and so proved that after the unloading of the coal from the railroad cars into the hopper and trucks, the defendant by its agents and employees then conveyed said coal in trucks from said hopper to its yards some four hundred feet away from the hopper where the coal is again unloaded and piled up in said yard.

"Plaintiffs pleaded and proved that the defendant company, through its agents and servants, hammered on the side of these coal cars or gondolas in order to release the coal in these cars to the disturbance of these plaintiffs and their neighbors.

"One particular part of the testimony introduced by the defendant is to the effect that beginning shortly after the institution of this action, defendant before unloading said cars of coal which were brought to its hopper on the railroad switch, the coal was sprinkled and wetted down in an effort to prevent any dust or dirt from same from flying away from the coal bin and onto

to defendants premises and going into the atmosphere and being conveyed by same to the places of residence of the plaintiffs. Notwithstanding plaintiffs' claim that regardless of the sprinkling and wetting down of the coal, the dust continues to fly into the atmosphere and is conveyed by means of same to the plaintiffs' places of residence.. * * *

"The evidence in this case is clear that there has been an invasion of, or unlawful interference with the rights of these plaintiffs and their neighbors to live free from the dirt and noise occasioned by the defendant in the operation of its coal business.

"The situation. is one which it seems to the court can be corrected by the defendant and that is by the building over the coal hopper of a roof or flooring with siding reaching from same to the top of the concrete walls composing the coal bin and beneath the rail switch track which would be dust proof and would not permit the dust arising from the dumping of the coal into the hopper or the loading of same from the hopper into the trucks to escape from the bin.

"The only opening or aperture in said roof or flooring over said bin to be one of such size only as will permit the coal from the car to be unloaded to flow from said car into said bin. In addition to the sprinkling. or wetting down of the coal in the car prior to its being unloaded, defendant is to have water sprinkled on said coal at the point where it runs from the coal car into the bin.

"The testimony also shows that when removing the coal so taken from the hopper to its yards and dumped there, it is again sprinkled or wetted down so as to do away with flying particles of dust or dirt.

"Unfortunately for the defendant, it did not begin this means of sprinkling or wetting down the coal until after the institution of this suit. If the above method of handling the coal is pursued by the defendant and the roof or flooring above suggested by the Court is constructed, it would seem to the Court that the defendant had done and was doing all within reason that might be expected of it. The Court is of the opinion from the proof that whatever dust or dirt comes from the premises of the defendant comes from the unloading of the coal from the railroad cars, and the dumping of same into the hopper. There is no reason in the opinion of

the Court to stop defendant from transporting the coal from the hopper to its yards and placing it there so long as it follows the method which the proof shows it is pursuing at this time—that is of sprinkling or wetting it down before and when it is dumped into the yards."

The judgment which the Chancellor entered is as follows:

"It is adjudged by the Court that the defendant be and is restrained and enjoined until the further order of the Court from dumping coal into the hopper from the railroad cars on its premises in such a way as to permit dirt and particles of dust to fly therefrom and permeate the atmosphere of the surrounding territory. That it is enjoined from releasing the coal from the cars which come upon its premises by pounding on the sides of same with a hammer or other instrument and that said coal in the future be released in such a way as will not produce coal dust and noise to the detriment of these plaintiffs. That defendant is required to continue the method so proven by it to have been used beginning shortly after the institution of this action of sprinkling and wetting down the coal before it is released from said cars and before it is hauled to and upon the yards maintained by it sprinkle or wet down said coal at the point where it upon its premises. Further, defendant is required to leaves said coal cars and is dumped into the coal bin. It is further adjudged that the plaintiffs recover of the defendant its costs herein."

A comparison of the wording of the judgment with that of the prayer of the petition would seem to indicate that appellants were granted the relief which they sought. On this appeal, however, they contend "that said coal business and the coal yards operated by the defendant in close proximity to their homes will continue to be a nuisance in itself, that the coal yard and the coal business cannot be operated without noise and dirt and dust invading the homes of the plaintiffs herein, in other words, that the said coal business has become a nuisance per se." But we find nothing in the law which would authorize us to prohibit appellee from operating its coal business provided it abates, in the manner directed by the Chancellor, the specific nuisances resulting from unnecessary noises and dissemination of dust. Ludlow is the northern terminus of the C. N. O. & T. P.

Railroad, and at a point near the residences of appellants and the property of appellee the Railroad Company maintains a coal yard, coal tipple, and railroad shops. Numerous trains are operated over its tracks, and large quantities of coal are unloaded from its cars and transferred by machinery to the tipple. From these facts it is impossible to escape the conclusion that appellants have for many years resided in an extremely noisy and dusty neighborhood, to the discomforts of which appellee's coal yard has merely contributed. In fact, some of the appellants admitted that they had suffered from the dirt occasioned by the operation of the railroad facilities, and explained their acquiescence in that annoyance by stating that they had become accustomed to it. In addition, the City maintains a refuse pile near the properties of appellants and appellee, on which debris is deposited and burned. Moreover, one member of each of the four married couples who instituted the action is employed at night and sleeps during the daytime, and three of the husbands are employees of the Railroad Company. It is not shown that appellee operated its coal yard during the night; and it is well settled that in determining whether or not a given annoyance is a nuisance which the law will abate, its effect upon persons of ordinary habits, tastes, and sensibilities only will be considered. The operation of a coal yard is not a nuisance per se, and the coal yard operated by appellee is not so located as to justify us in treating it as such within the rule recognized by many authorities, that what may not be a nuisance in one place may be such when situated in another. Melker, etc. v. City of New York, 190 N. Y. 481, 83 N. E. 565, 16 L. R. A., N. S., 621, 13 Ann. Cas. 544; 39 Amer. Juris., Nuisances, Sect. 11, Pages 289, 292. The following decisions of this Court support our indicated conclusion that the Chancellor granted appellants all the relief to which they were entitled: Kentucky & West Virginia Power Co. Inc. v. Anderson, 288 Ky. 501, 156 S. W. 2d 857; Kentucky-Ohio Gas Co. v. Bowling, 264 Ky. 470, 95 S. W. 2d 1; Wheat-Culvert Co. v. Jenkins, 246 Ky. 319, 55 S. W. 2d 4; Indian Refining Co. v. Berry, 226 Ky. 123, 10 S. W. 2d 630; Louisville Coffin Co. v. Warren, 78 Ky. 400.

The appellee sought and was granted a cross-appeal, but in its brief fails to complain of the Chancellor's ruling.

Judgment affirmed on the original and cross appeals.