## BRUMLEY v. MARY GAIL COAL CO., Inc.

Court of Appeals of Kentucky.
Feb. 8, 1952.

Luker & Tooms, London, Roy W. House, Manchester, for appellant.

Lyttle & White and Clay M. Bishop, all of Manchester, for appellee.

MOREMEN, Justice.

Appellant, Harlan Brumley, brought suit in which he sought to recover damages from appellee, Mary Gail Coal Company, Inc., for interference with the use of land which he owned in Clay County. Upon trial of the case, the jury returned a verdict for the defendant coal company and, from the judgment entered on the verdict, this appeal is prosecuted.

Appellant contends (a) the verdict of the jury is contrary to the law and the evidence and is flagrantly against the evidence; (b) the court erred in refusing to admit competent evidence and in admitting incompetent evidence; and (c) certain evidence offered by appellee was not competent under the pleadings and issues joined.

In September 1939, appellant purchased the real estate here involved, reconstructed

a residence thereon and added outbuildings and improvements. In July 1948, appellee acquired property adjacent to the premises of appellant and constructed and equipped buildings for the purpose of grading, screening, treating, and loading coal. In March 1949, appellant built a new home on the property at the approximate cost of $7000 and caused considerable grading to be done in preparation for the construction of a store building.

The business conducted by appellee is a coal processing and loading operation, including coal adaptable for stoker use which involves a treatment with petroleum products. No coal is mined on the property, but it is transported by truck from various mines in the vicinity. The plant is connected by spur tracks with the main railroad line. The operation has grown and, at the time of the trial in the circuit court, employed about 187 men and approximately 25 men in connection with trucking facilities. Approximately 50 railroad cars of coal per day were shipped.

Appellant offered the testimony of a great many witnesses as to the effect of this coal operation and it was shown by their testimony that the effluence from the property of the coal company settled in great quantities upon the premises belonging to appellant. This testimony presented the jury with an opportunity to believe that great clouds of coarse dust, which to some extent had been treated with oil, were released into the air and settled upon the adjoining property with the result that the dust particles penetrated the window and door sills into appellant's residence and infiltrated into closets and other recesses of the house. Some of these witnesses also disclosed that meat hanging in the smoke house was ruined; drinking and wash water was contaminated; vegetables in the garden were covered with a black film and, among other things, no person walked on his lawn without being marked with black coal dust. Appellant contends the deleterious effects of appellee's operation constituted an interference with his right to enjoy exclusive possession of his own property; that the value of his property

has been greatly diminished and, for this taking, he asks damages.

The appellee, in order to meet the issue joined by a traverse to the allegation of the petition, offered witnesses who gave testimony that they lived in the immediate vicinity of appellant's property and were not bothered to any great extent by the coal dust. Included in this group was a witness who had worked in appellant's house and her testimony concerning the dust condition was directly contrary to that given by witnesses produced by appellant. One witness, who lived within a hundred yards from Brumley's property, testified that she did laundry for six families besides her own, hung the clothes on a line near her house for the purpose of drying them, and that dust and coal did not accumulate on them when they were hung out. Several neighbors who lived within a hundred yards of appellant's home testified that the inconvenience caused by the operation was slight.

The jury was forced to select and believe the testimony of one set of witnesses or the other. They accepted the testimony of appellee's witnesses.

This brings us to appellant's first ground urged for reversal, i. e., the verdict of the jury is contrary to the law and the evidence, and is flagrantly against the evidence. The verdict is "contrary to law" within the statute authorizing a new trial only when it is contrary to instructions, whether right or wrong. Malone's Ex'x v. Chesapeake & O. Ry. Co., 249 Ky. 832, 61 S.W.2d 876. The appellant makes no contention in this case that the jury disregarded the instructions, nor does he contend that the instructions were erroneous. The evidence offered by appellee, as briefly summarized above, sufficiently supports the verdict in this case; therefore, no new trial may be properly granted. Yates v. Mullins, 233 Ky. 781, 26 S.W.2d 757. The witnesses offered by each party differed as to the physical facts involved and the court should not substitute its opinion for the jury's judgment concerning the credibility of the witnesses. Peak v. Arnett, 233 Ky. 756, 26 S.W.2d 1035. We have held that much

discretion is allowed a trial judge in ruling on a motion to set aside a jury's verdict as being flagrantly against the evidence, (the trial judge, too, has an opportunity to observe the witnesses on the stand), and we are of opinion that he did not abuse his discretion in overruling a motion for a new trial in this case.

Under appellant's second ground for reversal, it is urged that the court erred in refusing to admit evidence concerning alleged depreciation in rental value of his property. In determining the proper measure of damages for maintenance of an alleged nuisance, it is essential first to ascertain whether the nuisance is permanent or temporary. Kentucky-Ohio Gas Co. v. Bowling, 264 Ky. 470, 95 S.W.2d 1. A nuisance is temporary if it is capable of being corrected at a reasonable cost. Where a nuisance is permanent, the measure of damages is the depreciation in the market value of the property; where it is temporary, the measure of damages is the depreciation of the rental value of the property, if it be rented. City of Madisonville v. Hardman, 92 S.W. 930, 29 Ky.Law Rep. 253; City of Hazard v. Eversole, 280 Ky. 621, 133 S.W.2d 906.

In the case at bar, appellant elected to treat the alleged nuisance as being one permanent in character and sought damages in the sum of $20,000 for diminution in the market value of his property. He testified that this loss of value was $25,000 and his reason for recovery is based upon this theory. He cannot recover for both diminution in market value and rental value and, therefore, the testimony concerning the loss of rental value was properly rejected.

Appellant next contends that the court erred in excluding the following testimony and giving the following admonition:

"24. What would you say is the difference in the fair market value of the property without the dust from this tipple as of August 1949, or the property with the dust? A. With the dust in my opinion it is valueless.

Defendant objects, sustained and the Court admonishes the jury,

"Members of the Jury: The statement of the witness that the property is valueless with the coal dust is incompetent, and you will not consider it for any purpose."

We are of opinion that the question is not properly framed for the purpose of eliciting information concerning the true measure of damages and the objection to it was properly sustained by the court. The admonition is no more than affirmation of a simple truth; unnecessary, but harmless.

Appellant also contends that the court erred in permitting appellee to introduce a number of witnesses who testified concerning the general character of the community surrounding appellant's property, described the coal operations within a 5 mile radius, demonstrated that the coal business constituted the principal industry in the community and that the community was more prosperous and the value of property had increased since its development. In Reynolds v. Community Fuel Co., 309 Ky. 716, 218 S.W.2d 950, 951, we approved the introduction of similar testimony in a case that differs little in fact from the case at bar. There Goble Reynolds brought suit to recover $2000 damages done to his home and to the health of himself and his family as a result of an alleged nuisance committed by the company in the operation of a coal loading ramp near his home, and sought to enjoin the company from continuing the operation. The answer was a traverse. We said: "The chief industry in Blackey appears to be this large ramp. Customarily, it is in operation in the summer months from around 6:30 a. m., until the middle of the afternoon. Only twice has it run at night, and then just for a couple of hours. The coal is usually wet when handled on the ramp, but occasionally some dry coal is dumped into the bin. There is evidence in the record that since this ramp was put in operation business has improved in the village and that some of the increase in property values has been due to the ramp."

And this holding is in conformity with the law generally.

In 66 C.J.S., Nuisances, § 141, it is written: "Where plaintiff limits his claim for damages to the diminished value of his land because of the erection complained of, he cannot recover if such erection has increased the value of his land by an amount in excess of the damage done. Also, it has been held that if plaintiff's property will sell for as much for any use with the plant, alleged to constitute the nuisance, in operation as it would if the operation should cease, no recovery can be had for the reduction of its value for its use as a home; and that one whose property has increased in value, largely because of the erection of a manufacturing plant nearby, cannot recover damages, although it may no longer be as generally desirable as a home, when such person raised no objection to the erection of the plant; but that, if the increase in value is due to causes affecting all the real estate in the neighborhood and the property would sell for more if the nuisance were not there, plaintiff is entitled to recover damages. * * *"

Evidence which presents a description of the entire community is competent not only insofar as it pertains to damages, but it is also necessary to show whether the act complained of might properly be termed a nuisance in the surroundings where it was perpetrated. We so held in Strough v. Ideal Supplies Co., 300 Ky. 34, 187 S.W.2d 839, 841, saying: "The operation of a coal yard is not a nuisance per se, and the coal yard operated by appellee is not so located as to justify us in treating it as such within the rule recognized by many authorities, that what may not be a nuisance in one place may be such when situated in another. Melker, etc. v. City of New York, 190 N.Y. 481, 83 N.E. 565, 16 L.R.A.,N.S., 621, 13 Ann.Cas. 544; 39 Amer.Juris., Nuisances, Sect. 11, Pages 289, 292."

Under a separate topic, appellant contends that the foregoing type of evidence should not have been admitted because it was not competent under the pleadings and did not support the issues joined by the pleadings. The answer was a simple traverse. In effect, it put into issue whether or not appellant had been damaged by the conduct of appellee. Under the authority of the Reynolds case where the answer also consisted of a simple traverse, such evidence was competent. Appellant knew that it was necessary for him to meet the issue concerning diminution of market value, and proof concerning general conditions which affected market value in that community at that time was competent to support the issue and, in our opinion, did not vary from the issues joined. Therefore, the judgment is affirmed.