SEARCY et al.

v.

KENTUCKY UTILITIES CO.

McGINNIS et al.

v.

KENTUCKY UTILITIES CO.

ASH et al.

v.

KENTUCKY UTILITIES CO.

GRIFFY et al.

v.

KENTUCKY UTILITIES CO.

Court of Appeals of Kentucky.

Feb. 5, 1954.

Rehearing Denied May 7, 1954.

John C. Talbott, Ernest N. Fulton, Elmer E. Hubbard, Bardstown, for appellants.

Ogden, Galphin & Abell, Percy Brown, Jr., Louisville, Ollie J. Bowen, Lawrenceburg, for appellee.

CAMMACK, Justice.

These cases were consolidated on the trial and are so treated in this Court. The appeals are from judgments granting Frank Searcy $282.50 damages on his farm of 113.43 acres, Charles McGinnis, et al. $266 damages on 133 acres, Charles Ash, et al. $228 damages on 152 acres, and W. B. Griffy, et al. $472 damages on 236.4 acres, against the Kentucky Utilities Company for operating a permanent nuisance. The appellants contend that (1) the damages were inadequate; (2) the court erred in instructing the jury; and (3) incompetent testimony was admitted concerning prevailing winds.

In 1947, the Kentucky Utilities Company built and started operating a power plant on the Kentucky River two and one-half miles east of the city limits of Lawrenceburg. The plant is situated on the east side of the river. On the west side is a cliff which extends about 100 feet above the plant's smokestack. From this smokestack, fly ash, soot and smoke are discharged which settles on the appellants' farms, located on the cliff. The farms are from three-fourths to one and one-fourth mile "as a crow flies," from the power plant.

The appellants offered testimony of a number of witnesses to the effect the fly ash, soot and smoke from the power plant had upon their property. The fly ash, soot and smoke were discharged into the air and settled upon the appellants' property with the result that it penetrated the window sills into appellants' residences and settled upon the furniture and clothes therein. Some of the witnesses said the gardens and crops were covered with fly ash, to the extent that they were not fit for consumption. They said also that a person had to wear overshoes when walking on the lawn. The exhibits show that the fly ash, soot and smoke settled upon the outside of the houses and necessitated frequent painting.

To answer properly the questions presented we must determine whether the operation of the Tyrone plant was a permanent or temporary nuisance. In Kentucky-Ohio Gas Co. v. Bowling, 264 Ky. 470, 95 S.W.2d 1, 5, this Court held that:

"If the structure is in character relatively enduring and not likely to be abated, either voluntarily or by an order of court, it is generally held that the nuisance is a permanent one; * * *."

In the case at bar it was proven that the Kentucky Utilities Company had obtained a "certificate of convenience and necessity" from the Public Service Commission, and that the structure was an enduring one.

The complaint of Instruction No. 1 is that it failed to include the words, "soot and smoke." The appellants claim that they are entitled to collect damages for soot and smoke. In the Kentucky-Ohio Gas Co. v. Bowling case it was pointed out that annoyance and discomfort are not elements of damage for which one may recover in addition to the depreciation of the market value of his property, but evidence thereof is admissible for the purpose of showing the diminution of the salable value of his property, as the nuisance affected it. In measuring a property owner's damages, the diminution of the property's salable value necessarily includes the annoyance and discomfort which directly affect its value. Since the instructions are based upon the pleadings and proof, the words, "soot and smoke," should have been included therein.

In Instruction No. 2 the appellants object to the court instructing upon the unforeseen action of the wind or air currents of unusual velocity or direction, as causing the fly ash to settle on their property. Dix E. Newton, meteorologist, in charge of the United States Weather Bureau at Lexington, Kentucky, was allowed to testify as to the prevailing winds at Lexington and Louisville. Since there was no evidence concerning the direction the wind blew at the Tyrone plant, it was error to instruct thereon.

In Instruction No. 3 the court said the damages would be the difference

in the fair market value immediately before the commencement of the operation of the power plant and immediately after its commencement. The appellants object to the words, "immediately before and immediately after," as fixing the damages at that particular time. The measure of damages does not relate solely to the building and immediate operation of the power plant, but rather to the difference in the fair market value of the property prior to the settling of the fly ash, soot and smoke caused by the operation of the power plant and the fair market value of the property resulting from the conditions apparent after the settling. Brumley v. Mary Gail Coal Co., Ky., 246 S.W.2d 148.

The judgments are reversed for proceedings consistent with this opinion.