Paul A. GEORGE et al., Appellants,

v.

STANDARD SLAG COMPANY, Inc.,
Appellee.

Court of Appeals of Kentucky.

June 14, 1968.

Rehearing Denied Oct. 11, 1968.

C. B. Creech, Stanley Hogg, Ashland, for appellants.

Michael R. Dowling, Diederich & Hermansdorfer, Ashland, for appellee.

PALMORE, Judge.

A jury returned its verdict in favor of the owners of 25 residential properties in Ashland against Standard Slag Company, Inc., for damages attributed to air pollution emanating from Standard's nearby slag plant. The owners appeal from a judgment n. o. v. for the defendant company. The judgment conditionally directs a new trial in event of a reversal. CR 50.03. It is our conclusion that a new trial should be had, principally because the verdict on its face, when construed in the light of the evidence, appears to be inconsistent with the instructions and thus contrary to law.

■ As the alleged nuisance is permanent in nature, the correct measure of damages is the resulting diminution in market value of the respective pieces of property,[1] and the jury was clearly instructed to that effect, with the additional caveat that "in arriving at this result you will not award any damages for (a) Air pollution by dust, odors or noise which ordinarily, normally and reasonably would be expected from industry, including defendant's business, or the area, or (b) For personal discomfort, annoyance or sickness to plaintiffs, or either of them, this action being only an action for diminution of the market value of the plaintiffs' property as measured by these instructions and the evidence of discomfort, annoyance or sickness of plaintiffs * * * goes to you only for the purpose and you can consider it only for the purpose of considering whether and to what extent the property of plaintiffs * * * has been depreciated in market value, if any," etc.[2]

Two forms of verdict were submitted to the jury with the instructions, one finding for the defendant and the other for

---

1. Cf. Brumley v. Mary Gail Coal Co., Ky., 246 S.W.2d 148, 151 (1952); Searcy v. Kentucky Utilities Co., Ky., 267 S.W. 2d 71, 72 (1954).

2. Though we do not approve the quoted excerpt, and will discuss the instructions later in this opinion, the jury was of course bound by all the instructions as

the plaintiffs. The one finding for the plaintiffs listed the 25 pieces of property individually and called for a "before value," an "after value," and a "difference" for each. When the jury returned its verdict, signed by the foreman, no "before" or "after" values had been inserted, but a "difference" of $1200 was indicated for each property. At the same time and as a part of the verdict the court was given a separate piece of paper, also signed by the foreman, bearing the following handwritten explanation:

> "We the jury in consideration of all the evidence and circumstances agree 100% that the Standard Slag Company operated its business in a negligent manner producing air pollution by dust, odor, and noise as to cause the plaintiffs for [sic] personal discomfort and annoyance.

> "So we award in each case the total sum of $1,200.

> "The jury would like to state as a body that (we believe this award be in terms that) we believe this award be in terms of air pollution only, that the dust in the past 2 or 3 years did not damage their homes."

It was noticed at once that in three instances the award of $1200 exceeded the amount authorized by the testimony, and after a conference in chambers between counsel and the court the jury was sent out to make appropriate corrections, which it did. No other motion for correction of or objection to the verdict was offered before the jurors were discharged. Later, in its motion for judgment n. o. v. or a new trial, the defendant company took exception to the verdict on the basis of its form and content, asserting that it was inconsistent and not authorized under the instructions.

Counsel for the property owners contended and still contend that the verdict was *neither inconsistent nor unauthorized*, and in support of a motion for judgment on the verdict they tendered affidavits by nine of the jurors to the effect that the awards were for diminution in market value of the property as the result of air pollution, that such pollution had not caused *physical* damage to any of the property but had reduced its value.

The trial court at first entered an order granting a new trial on the ground that "the uncertainty and conflict" in the verdict was such that neither side could be granted a judgment. The affidavits of the nine jurors were disregarded as tending to impeach the verdict. Thereafter, on its own motion the trial court rescinded the order directing a new trial and entered the judgment n. o. v. from which this appeal is taken. It is apparent from an explanatory statement placed in the record by the court that the purpose of this change was to provide the plaintiffs an appealable order and secure a ruling from this court before subjecting the parties to another trial.

The defendant company concedes that uncertainty and conflict in the verdict would not authorize a judgment n. o. v. in its favor,[3] but now takes the position that it was entitled to a judgment *on* the verdict (as distinguished from judgment *notwithstanding* the verdict) because the specific finding of no damage to the property overrides and refutes the general finding for the plaintiffs. In other words, it seems clear to counsel for the company that the jury found no damage, physical or otherwise, to the property, but mistakenly tried

they actually were given, right or wrong. Brumley v. Mary Gail Coal Co., Ky., 246 S.W.2d 148, 150 (1952); and cases listed in West's Kentucky Digest, Trial,

3. "The considerations governing a proper decision on a motion for a judgment

notwithstanding the verdict are exactly the same as those first presented on a motion for a directed verdict at the close of all the evidence." Clay's Kentucky Practice, CR 50.02, Comment 4.

to award damages for personal annoyance and discomfort.

■ Counsel for the appellant property owners are equally certain that there is no ambiguity in the verdict. They say, in fact, that the affidavits of the nine jurors did not tend to impeach the verdict, but were in aid and explanation of it.[4]

■ We might agree that the verdict was not necessarily defective except for one damning circumstance. All of the valuation evidence in the case was given by three witnesses, one for the property owners and two for the company. The witness for the property owners testified that in his opinion each of the properties had been reduced in market value by 25%. The expert witnesses for the company denied that any of the property had diminished in value. According to the estimates of the witness for the plaintiffs, their various parcels ranged in value, before the nuisance, from $3,950 to $12,950. Similarly, the values assigned by the company's witnesses ranged between $3,200 and $10,250. Since, therefore, the only witness who testified to a reduction in value was of the opinion that all the property suffered the same percentage of loss, there simply was no basis in the evidence for an award of $1,200 apiece. Obviously this result must have reflected something other than diminution of market value, and for that reason alone the verdict was fatally erroneous on its face.

■ If the portion of the verdict written on the separate piece of paper had stated in so many words that the jurors found no reduction in or damage to the *value* of the property, the defendant company's theory that it was entitled to a judgment on the verdict would have merit. But we have the same reaction to the verdict as did the trial court. We have no firm conviction as to just what the jury was attempting to say. Indeed it seems probable that they did not grasp the full meaning and significance of the instructions.

■ It is strongly argued in behalf of the appellant property owners that the defendant company waived the defects in the verdict by failing to object before the jurors were discharged. In Anderson's Executrix v. Hockensmith, Ky., 322 S.W.2d 489 (1959), a distinction in this respect was drawn between a defect in form and one that "is of the substance and affects the merits of the case." Later, in Smith v. Crenshaw, Ky., 344 S.W.2d 393, 395 (1961), the question was reconsidered and it was said among other things that if the ambiguity or inconsistency (regardless, presumably, of whether it is substantive or merely formal) relates only to the *grounds* on which the verdict was rendered, the party aggrieved must at once move that the jury be sent back to correct the verdict, and cannot wait until the filing of a motion for new trial in order to raise the question. Application of the latter rule might very well indicate a waiver in this case were it not for the fact that even without the additional explanatory verdict returned by the jury, its attempt to award the same amount to each of 22 sets of claimants whose properties were of different values, but who could recover only by virtue of testimony that all of the property was damaged in the same ratio, as distinguished from dollar amount, obviously was contrary to the evidence and the instructions. Hence the defect was timely raised in the motion for a new trial. Cf. Greenup County v. Redmond, Ky., 335 S.W.2d 335, 337, 338 (1960).

Both parties objected to the instructions for various reasons, and the statement entered into the record by the trial court expresses its desire for guidance in this

---

4. A juror's affidavit may be received for the purpose of showing that no misconduct took place, but not for the purpose of clarifying or explaining the jury's verdict. Romans v. McGinnis, 156 Ky. 205, 160 S.W. 928, 929 (1913). Hence the trial court's disregard of the affidavits was correct.

respect. Except for one point involving the question of negligence, rather than undertaking a detailed critique of the instructions given we shall merely set forth what will be appropriate if the evidence be substantially the same upon a new trial.

■ The requisite principles to be embraced by the instructions in a case of this kind are stated in Louisville Refining Co. v. Mudd, Ky., 339 S.W.2d 181, 186–187 (1960). Among the factors the jury may consider in determining whether the defendant's use of its property is unreasonable in relation to the amount of harm done to the plaintiffs is the manner of the operation of its plant. 339 S.W.2d at p. 187. Whether the plant is being operated in a customary and prudent manner, and whether the defendant is doing all that it could reasonably be expected to do in order to prevent or minimize the annoyance of which the plaintiffs complain, certainly are pertinent elements from an evidentiary standpoint, but we do not believe the question of negligence need or should be introduced into the instructions. The focus is on reasonableness as against unreasonableness, possible negligence being no more than an element entering into a resolution of that question. Cf. Lynn Mining Co. v. Kelly, Ky., 394 S.W.2d 755, 758–759 (1965).

■ Consistent with Louisville Refining Co. v. Mudd, Ky., 339 S.W.2d 181 (1960), an instruction substantially as follows will suffice to cover the issues presented by the facts of this case:

1. If you believe from the evidence that in the operation of its slag plant the defendant company, through the release or discharge of impurities into the atmosphere, causes unreasonable and substantial annoyance to the occupants of any of the plaintiffs' properties, and that such impurities would cause substantial annoyance to a person of ordinary health and normal sensitivities, and if you further believe from the evidence that solely by reason of that condition the market value of their properties (as "market value" is defined in Instruction No. 5) has been materially reduced, then you will find in their favor; but unless you so believe, you will find for the defendant company.

2. In determining whether such annoyance (if any) is unreasonable you shall take into consideration all of the circumstances of the case as shown by the evidence, including the lawful nature and location of the defendant company's slag plant; the manner of its operation; its importance and influence on the growth and prosperity of the community; the kind, volume and duration of such atmospheric pollution (if any); the respective situations of the parties; and the character and development of the neighborhood and locality in which their properties are situated, including but not confined to existing zoning laws and regulations applicable to them.

3. If you find for the plaintiffs (or for any one or more of them) under Instruction No. 1, you will render a separate verdict for each, using the appropriate specimen verdict attached as a part of these instructions, and will award to each a sum of money equal to the amount by which you believe the market value of his or their property (as "market value" is defined in Instruction No. 5) immediately before the installation of the "pug mill" operation in 1964 has been reduced solely as the result of the defendant company's operation of its slag plant since that time.[5]

4. If you find for the defendant company on all the claims of the plaintiffs, you should simply say "We, the jury, find for the defendant," using the appropriate specimen verdict attached as a part of these instructions. But if you find for some one or more of the plaintiffs, but not all of them, then you should write in your verdict, following the portion in which you have inserted the amount or amounts awarded to

5. The specimen verdict may, but need not, require a "before value," an "after value," and a "difference" for each property, as in condemnation cases.

the plaintiffs, these additional words: "Where no amount is indicated we find for the defendant."

5. "Market value" is the price that property will bring when offered for sale by one who desires to sell but is not compelled to do so and is bought by one who desires to purchase but is not compelled to have it.

6. Nine or more of you agreeing may make a verdict. If made by less than all twelve it must be signed by all who agree to it. If unanimous, it need only be signed by the foreman.

■ That personal discomfort and annoyance is admissible in evidence only as it affects the desirability, and thus market value, of the property can best be brought to the attention of the jury by admonition at the time of or following the reception of such testimony, and as often as the trial court deems it necessary to fix it in the minds of the jurors. As in condemnation cases, many factors bear on market value and it is not practicable to clutter the instructions with an exposition of the subject.

■ The instructions require "material" (that is, substantial) damage as one of the criteria of recovery. Hence there should be no instruction on (and no verdict awarding) nominal damages. If damage is merely nominal, though conceivably a trespass might exist, there is no nuisance.

Neither need there be an instruction that if the defendant provides only part of the nuisance it is liable on a pro rata basis. The instructions authorize recovery only to the extent that the defendant's operation alone amounts to a nuisance. If other sources add to and make the nuisance worse, and if the evidence is sufficient to the purpose, a jury can allocate the resulting damage without a specific instruction to that effect, and this may be covered in the arguments of counsel. On the other hand, if the defendant's operation alone is not enough to create a nuisance, it would be

unjust to make it one through the cumulative effect of someone else's activities.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.