**RADCLIFF HOMES, INC., Appellant,**

**v.**

**Eddie JACKSON and Carol Jackson, John R. Stellwagen and Marilyn Edith Stellwagen, Charles Parks and Pamela Parks, John Drexler and Drexler Mechanical Enterprises, Inc., and INA Underwriters Insurance Company, Appellees.**

**Eddie JACKSON and Carol Jackson, Appellants,**

**v.**

**John R. STELLWAGEN and Marilyn Edith Stellwagen, Charles Parks and Pamela Parks, John Drexler, Drexler Mechanical Enterprises, Inc., INA Underwriters Insurance Company, and Radcliff Homes, Inc., Appellees.**

**Nos. 87–CA–2183–MR, 87–CA–2370–MR.**

Court of Appeals of Kentucky.

Feb. 24, 1989.

Donald E. Skeeters, Skeeters & Bennett, Radcliff, for Radcliff Homes.

Douglas E. Miller, Miller & Durham, Radcliff, for Stellwagens.

Nicholas L. Pearl, Pearl, Musselwhite & Wheatley, Radcliff, for Drexler & Drexler Mechanical Enterprises.

John J. Scott, Whitlow & Scott, Elizabethtown, for Jacksons.

David VanZant, Huddleston & VanZant, Elizabethtown, for Parkses.

Gary D. Garrison, Ewen, MacKenzie & Peden, Louisville, for INA Underwriters.

Before HOWERTON, C.J.,
McDONALD, J., and WHITE, Special
Judge.

McDONALD, Judge.

This case originated as a nuisance action in the Hardin Circuit Court. The plaintiffs, John and Marilyn Stellwagen, appellees herein, were the owners of a house in Radcliff, Kentucky. Across a cul-de-sac from them lived defendants Eddie and Carol Jackson, who had purchased their home from the original owners, Charles and Pamela Parks. Both the Stellwagens' and the Jacksons' homes were built by defendant Radcliff Homes, Inc. (Radcliff). The septic tank system for the Jackson home was installed by appellee John Drexler for Drexler Mechanical Enterprises, Inc., under a contract with Radcliff.

This septic tank is at the core of the present controversy. It first began malfunctioning in early 1981, while the house

was still occupied by the Parkses. Heavy use of indoor plumbing facilities caused raw sewage to back up into the house. A limited warranty issued by Radcliff was still in effect, and the Parkses complained directly to that company. Radcliff in turn consulted John Drexler who opined that the back-up was caused by excess ground water (a "wet spring") flooding the septic system's lateral lines. He also stated that the problem could only be corrected, if at all, by installing a sand filter box and an entire new system of lateral lines in the backyard. (The existing lines are in the front). He estimated that new lateral lines alone would cost between $1200 and $1500. Radcliff's president promptly hired a different plumber who merely re-dug the existing laterals and put new gravel around them. This temporarily abated the problem and the Parkses had no further trouble.

In February of 1982, Eddie and Carol Jackson entered into a contract for deed for the Parks's house and moved into it. There were no problems with the septic tank until May of 1983. At this time raw sewage began to seep to the surface of the Jacksons' yard. After about a month the seepage had become so obnoxiously odiferous that the Stellwagens called the Hardin County Health Department. An environmentalist from the health department, Scottye Wheeling, investigated and told the Jacksons to correct the problem. In response, the Jacksons at first did nothing; later, Eddie Jackson took a shovel and dug a ditch which diverted the flow of raw sewage from his yard to a culvert running onto the Stellwagens' property. From there the seepage flowed into a creek which ran through the Stellwagens' backyard.

The Stellwagens continued to complain to the health department. Three times Scottye Wheeling sent the Jacksons a "Thirty Day Notice to Correct"—on December 27, 1983; June 1, 1984; and August 20, 1984. Finally, on November 7, 1984, the Hardin County Attorney wrote to the Jacksons, threatening criminal action under KRS

212.210 if the sewage problem was not corrected immediately. In response, the Jacksons paid Roto–Rooter $105 to pump out the septic tank. After hiring two more plumbers who unsuccessfully attempted to correct the problem, the Jacksons heeded the advice of the health department to use the tank as a holding system and have it pumped regularly. As of the date of the trial, this course of action had succeeded in at least temporarily solving the problem.

The Stellwagens, in the meantime, had moved in August, 1984, to Walla Walla, Washington, for unrelated reasons. They took their house off the market in December and rented it through a local agent while continuing to pay the mortgage themselves. The house was eventually sold at a judicial sale after the Stellwagens declared bankruptcy.

Such is the factual background of this case. Out of the many claims, cross-claims and third-party claims that resulted, the trial court, which heard the case without a jury, ordered in its judgment:[1]

1. That the Plaintiffs Stellwagen recover from the Defendants Jackson and Radcliff Homes, Inc., jointly and severally, compensatory damages in the amount of $10,036.00, plus interest at the legal rate from the date of this Judgment until paid;

2. That the Plaintiffs Stellwagen recover from the Defendants Jackson punitive damages in the amount of $7,500.00, together with interest at the legal rate from the date of this Judgment until paid;

3. That the Defendants Jackson recover from Radcliff Homes, Inc. the sum of $839.90, together with interest thereon at the legal rate from the date of this Judgment until paid;

. . . . .

6. That the claim of the Defendant Radcliff Homes, Inc. for indemnity or contribution against the Third Party Defendants Drexler and Drexler Mechanical Enterprises, Inc. is dismissed[.]

Both the Jacksons and Radcliff appeal.

1. Other portions of this judgment have not been appealed.

■ Appellants Jackson contend, first, that they should have received a directed verdict at the close of the plaintiffs' case.[2] Most of the appellants' arguments in support of this contention are factual distortions and they fail to persuade us. The trial court in this case acted as fact finder as well as adjudicator; it found that a nuisance, temporary in nature,[3] resulted from the Jacksons' use of their property as the Stellwagens alleged in their complaint. As a reviewing court we may not set aside this finding of fact unless it is clearly erroneous, CR 52.01, which it is not; in fact, it appears to be amply supported by the evidence. Appellants argue that a "trifling annoyance and inconvenience" does not constitute an actionable nuisance, *Reynolds v. Community Fuel Co.*, 309 Ky. 716, 218 S.W.2d 950, 952 (1949), but we would not so characterize the steady flow of the neighbors' excrement into one's yard. Appellants also object to the court's failure to weigh the reasonableness of their use of their property against the gravity of harm done to the plaintiffs. *Louisville Refining Co. v. Mudd*, Ky., 339 S.W.2d 181 (1960). Although the court did not expressly state that it had weighed the evidence thusly, it quite distinctly found that the Jacksons' use of their property was unreasonable and that this had an injurious effect both on the Stellwagens' use of their property while in residence and upon their ability to sell it. Furthermore, we detect no factual error in the court's refusal to find that the nuisance, if there was one, arose from every house in the neighborhood. Even if it is possible that more than one household's septic tank emitted an obnoxious odor, there was no evidence that anyone but appellant Jackson actually diverted the flow of his own sewage onto the plaintiffs' property.

"It is a general principle of law that every person may make such use as he will of his own property, *provided* he uses it in such a manner as not to injure others." *Commonwealth ex rel. Dep't of Fish and Wildlife Resources v. Mayer*, Ky., 357 S.W. 2d 879, 881 (1962) (emphasis added); *see also Kentland–Elkhorn Coal Co. v. Charles*, Ky., 514 S.W.2d 659, 663 (1974), which holds that "an owner may not use his property in such a way as *unreasonably* to injure another's property". (Emphasis in original.)

Thus, we affirm the trial court's finding on the issue of the Jacksons' liability. We turn now to the question of damages.

■ Although case law on this subject is confusing and occasionally in conflict, it is as a minimum clear that there can be no nominal damages in a nuisance action, *George v. Standard Slag Co.*, Ky., 431 S.W.2d 711, 716 (1968); the injury "must be real and substantial and in the case of private nuisance must be such as to interfere materially with ordinary physical comfort or the reasonable use of property." *Louisville Refining Co. v. Mudd, supra* at 184. The most commonly cited measure of damages for a temporary nuisance is as follows:

Where the property is occupied by the owner the measure of damages in a temporary nuisance case is the diminution in the value of the use of the property during the continuance of the nuisance, and if the property is not occupied by the owner it is the reduction in the rental value during that period.

*Adams Construction Co. v. Bentley*, Ky., 335 S.W.2d 912, 913 (1960). While " 'diminution in the value of the use of property' is a rather elusive concept," it has been recognized that "discomfort caused by this type of injury may be considered as an element of damages." *Price v. Dickson*, Ky., 317 S.W.2d 156, 157 (1958).

The trial court valued the Stellwagens' diminished use and enjoyment of their property at $400 per month, which figure appellants do not directly contest. In cal-

---

**2.** Presumably, since the court was sitting without a jury, the appellants mean that a dismissal should have been granted under CR 41.02(2).

**3.** A "temporary" as opposed to a "permanent" nuisance is a continuing one which "results from some improper installation or method of operation *which can be remedied at reasonable expense.*" *Lynn Mining Co. v. Kelly*, Ky., 394 S.W.2d 755, 757, 759 (1965). (emphasis in original)

culating the damages that accrued after the plaintiffs moved, however, the court did not rely upon the reduction in rental value (expert testimony established that the Stellwagens received very nearly the market value), but rather deducted the net rent the plaintiffs received each month from their monthly mortgage payment, a difference of $404 per month for nine months.

■ Appellants argue that the court erred in not limiting the plaintiffs' damages for their period of non-occupancy to reduction in rental value. However, the trial court made a finding of fact that the Stellwagens only withdrew their house from the market because of the possible liability involved in selling a house affected by a nuisance known to them. This effectively forced them to rent it in order to mitigate their damages. In this case, then, the standard measure of damages would not adequately compensate them for their injury. This is at odds with the rule in this jurisdiction that "the successful plaintiff is entitled to compensation for all natural and probable consequences of the wrong." *Lexington–Fayette Urban County Gov't v. Middleton*, Ky.App., 555 S.W.2d 613, 618 (1977); *Ross v. Kohler*, 163 Ky. 583, 174 S.W. 36, 41 (1915). There is no exception to this basic rule for nuisance cases. "[T]he concern of the courts of Kentucky ... [is] to insure that those who are damaged by nuisances recover, in one form or another, every injury to person and property which they suffer thereby[.]" *Kentucky West Virginia Gas Co. v. Lafferty*, 174 F.2d 848, 853 (6th Cir.1949), which further explains:

> [A]ccording to Kentucky law, all injuries of every nature, whether real or personal, suffered from a nuisance, whether temporary or permanent, are recoverable as damages. Statements by the Court of Appeals of Kentucky ... that the measure of damages from a temporary nuisance is the diminution in the value of the use and enjoyment of the property, do not necessarily exclude the recovery

of other damages where they are proved to result from the nuisance.

*Id.* at 852.

■ The court also awarded the plaintiffs $7,500 in punitive damages against the Jacksons only, reasoning that Radcliff had not displayed the requisite willful or wanton disregard for the plaintiffs' rights. The Jacksons' principal argument is a factual one: they claim to have taken "immediate" and elaborate steps to correct the problem with the septic tank. In fact, they took no steps at all, except for diverting the seepage onto the Stellwagens' property, until 18 months after they were first contacted by the health department. Even then it appears that only the threat of prosecution finally induced them to hire a plumber.

Given these facts we cannot say that the award of punitive damages was unjustified. "The threshold for the award of punitive damages is misconduct involving something more than merely commission of the tort," that "something more" being malice. *Fowler v. Mantooth*, Ky., 683 S.W.2d 250, 252 (1984). "Malice may be implied from outrageous conduct, and need not be express so long as the conduct is sufficient to evidence conscious wrongdoing." *Id.* The defendants' conduct must be intentional and deliberate, and have the character of "outrage." *Id.* The Jacksons did not merely allow raw sewage to foul their own property; Mr. Jackson actually diverted the flow of his family's waste onto the property of another. These facts are sufficient to indicate malice, or "willfulness or a reckless or wanton disregard for the rights of others." *Holloway Constr. Co. v. Smith*, Ky., 683 S.W.2d 248, 250 (1984).

Thus, we affirm the trial court's findings of fact and conclusions of law regarding appellants Eddie and Carol Jackson. We will now address the issues raised by Radcliff Homes.

Radcliff first argues that it is protected by the applicable statute of limitations, KRS 413.135, which has been more properly described as a "no action" statute.[4] We

4. KRS 413.135 reads: "(1) No action to recover damages, whether based upon contract or

sounding in tort, resulting from or arising out of any deficiency in the construction compo-

agree with the trial court that the constitutionality of this statute is dubious.[5] However, we need not delve into that bucket of worms as the statute in question only cuts off actions filed more than seven years after completion of the improvement, not six years as Radcliff has repeatedly stated. This action, by Radcliff's own calculation, was filed six years and three months after substantial completion of the Jackson home, and this renders Radcliff's statute of limitations argument meritless.

■ We would not so characterize that party's next contention, which is that the trial court erred in finding the company liable under a theory—strict products liability—which was neither proven nor pled, and which appeared for the first time in the judgment. The court refused to alter, amend or vacate this portion of its judgment, citing as its authority CR 54.03(2), which states that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

We do not agree that this is a situation in which rule 54.03 may be properly applied. As one court construing the identical federal rule explained:

> This does not mean ... that there are no restrictions on the relief that may be granted under Fed.R.Civ.P. 54(c). What a court may do ultimately is limited by fundamental notions of due process and fair play. Fed.R.Civ.P. 54(c) permits relief based on a particular theory of relief only if that theory was squarely presented and litigated by the parties at some stage or other of the proceedings.

*Evans Products Co. v. West American Ins. Co.*, 736 F.2d 920, 923 (3rd Cir.1984) (citation omitted). Decisions from this jurisdiction which cite rule 54.03 with approval are ones in which the contested facts and legal theories are fully litigated, and only the relief granted deviates from the pleadings.[6] In contrast, "the theories of negligence and strict liability are mutually exclusive," *Commonwealth, Dep't of Transp., Bureau of Highways v. Burger*, Ky.App., 578 S.W.2d 897, 898 (1979). The elements which a plaintiff must plead and prove in a negligence action are: (1) the existence of a duty, required by law, which requires the defendant to conform to a certain standard of conduct; (2) failure on the defendant's part to conform to that standard; (3) a causal connection between the defendant's conduct and injury to the plaintiff; and (4) actual loss or damage. W. Prosser, *Law of Torts* (4th ed.1971) at 143. Whereas to prevail in an action based upon strict products liability, a plaintiff must establish: (1) that there is a "product," which is (2) in a defective condition unreasonably dangerous to the user or consumer or his property, and (3) which reaches the user or consumer without substantial change in the condition in which it is sold; (4) that the product is sold by one who is engaged in the business of selling such a product which (5) results in physical harm to the ultimate user or consumer or his property. *Restatement of Torts, Second,* § 402A (1965).

In the trial of the present case, not one of the elements of strict liability was proven, or even argued, not even the fundamental question of whether the septic system

---

nents, design, planning, supervision, inspection or construction of any improvement to real property, or for any injury to property, either real or personal, arising out of such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person after the expiration of seven (7) years following the substantial completion of such improvement."

**5.** *See Tabler v. Wallace*, Ky., 704 S.W.2d 179 (1985), which declared the statute's predecessor unconstitutional; *see also* Stipanowich, *Kentucky's "No Action" Statute: Recalled to Life?*, 51 Ky.Bench & Bar No. 3 (1987).

**6.** *See Pemberton v. Osborne*, Ky., 333 S.W.2d 940 at 942–43 (1959): "[T]he evidence unerringly developed without objection the very issue it was necessary for the lower court to resolve in order to adjudicate the respective rights of the parties"; *Shreve v. Taylor County Public Library Bd.*, Ky., 431 S.W.2d 861 at 862 (1968): "[T]he question which this judgment resolves is ... the 'controlling' one in this litigation. The judgment is in reality a declaration of the rights of the parties on the only question which appellants themselves have raised in this controversy."

constituted a "product," as opposed to an improvement to real estate as it appears. This is only one of the many defenses, both of law and fact, which Radcliff might have utilized had it known that it was defending a strict liability claim. Factually, for instance, the company might have prepared proof that the "product" was not defective or that it had been misused by the Jacksons. We consider it unnecessary to address the bulk of Radcliff's strict liability defenses since we agree with the company that to defend oneself on a negligence claim and then be slapped with a judgment based on an entirely different theory is simply too prejudicial to the defense.

This does not necessarily compel a dismissal of the action against Radcliff, despite the company's contention that there is an "absolute, total lack of any evidence Radcliff Homes negligently repaired" the controversial septic tank. On the contrary, the eviddnce could support a finding that Radcliff, while still obligated by warranty to repair the system, did so in a negligent manner, thus lulling the occupants into believing the problem solved. Thus, we cannot agree with Radcliff that it can be exonerated from liability, to either the Jacksons or the Stellwagens, because of the trial court's failure to find negligence on its part.

■ It is our opinion that the trial court, in determining Radcliff was strictly liable for the damage, failed to make a finding as to Radcliff's negligence, "not because it could find no negligent conduct, but rather because it did not feel it was necessary to make such a finding in light of the strict liability theory it espoused." *Dep't of Transp. v. Burger, supra.* In a nuisance case either strict liability or negligence may form the basis for liability, *Louisville and Jefferson County Air Board v. Porter,* Ky., 397 S.W.2d 146 (1965). However, in this case the cause of action alleged was negligence, and on remand the trial court should consider the evidence against Radcliff in that light.

The trial court also denied Radcliff's claim for indemnity or contribution from John Drexler. We agree that indemnity was not proper under the rule of *Brown Hotel Co. v. Pittsburgh Fuel Co.,* 311 Ky. 396, 224 S.W.2d 165 (1949).[7] However, the court denied contribution based upon a products liability statute, KRS 411.320. Since this was not a proper basis of liability, on remand the trial court should determine whether Drexler was negligent and, if so, the extent to which this contributed to the plaintiffs' injuries.

■ Once the court has decided which parties are liable under the proper theories, it must then apportion liability among those at fault rather than simply holding the wrongdoers jointly and severally liable. This is mandated by the recent enactment of KRS 411.182, which requires allocation of fault in all tort actions.[8] From the language of this statute we adduce that Drex-

7. "[T]here may be complete indemnity where one party's liability is secondary because it arose from the negligence of the other party and would not have arisen but for it." *Id.* 224 S.W. 2d at 168. In other words, indemnity may be had from a party whose actions were the "primary cause" of injury. The trial court did not find any party primarily responsible for the septic tank's malfunction, and we are unable to do so from the record.

8. KRS 411.182 reads in pertinent part as follows:

(1) In all tort actions ... involving fault of more than one party to the action, including third-party defendants ... the court ... shall make findings indicating:
(a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant [and] third-party defendant[.]
(2) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
(3) The court shall determine the award of damages to each claimant in accordance with the findings ... and shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.
*See also Floyd v. Carlisle Construction Co.,* Ky., 758 S.W.2d 430 (1988).

ler's negligence, if such be found, must be taken into account in apportioning damages to be awarded the plaintiffs, although he was not an original party to the suit but only brought in as a third-party defendant by Radcliff.

The judgment of the Hardin Circuit Court is affirmed in part, reversed in part and remanded for further action consistent with this opinion.

WHITE, Special Judge, concurs.

HOWERTON, C.J., concurs in result.